MARCELLUS, RESPONDENT, *v.* WRIGHT ET AL., APPELLANTS.

(No. 4,918.)

(Submitted January 3, 1923. Decided January 25, 1923.)

[212 Pac. 299.]

*Resulting Trusts—Corporations—Officers—Misjoinder of Parties Defendant—Pleadings—Amendments—Estates of Deceased Persons—Executors and Administrators—Declarations of Decedents—New Trial—Harmless Error.*

Resulting Trusts—Corporations—Officers—Misjoinder of Parties Defendant—Complaint—Insufficiencey.

1. Where, in an action against a bank and one of its officers to have enforced an equitable title to lands, the complaint repeatedly alleged that the individual defendant in the transactions referred to acted in his capacity as cashier and· managing director of the bank, and did not charge that he did anything in his individual capacity, the complaint did not state a cause of action against the officer as an individual, and he was neither a proper nor a necessary party to the action.

Pleadings—Complaint—Amendment at Conclusion of Testimony—Denial—When Proper.

2. Where testimony was permitted to be introduced over the objection of the executrix of an estate that the complaint did not state a cause of action against her testate or the estate, leave to amend the pleading asked at the conclusion of the testimony so as to state a cause of action was properly denied.

Same—Extent of Rule of Liberal Construction.

3. While, in construing a pleading for the purpose of determining its effect, its allegations should be liberally construed, the liberality should not go to the extent of permitting the pleader to change his theory of the case upon the trial to the injury of the adverse party.

Action Against Executor or Administrators—Declarations of Decedent—Rule of Admissibility—Discretion.

4. Under section 7891, Revised Codes of 1907 as amended (Chap. 41, subd. 3, Laws of 1913) declaring that parties to an action against

[65 Mont. 580.]

an executor or administrator upon a demand against the estate of a deceased person are incompetent to testify to transactions or oral communications between the witness and the deceased, except when it appears that without the testimony injustice will be done, the power to admit or reject such testimony is lodged in the sound discretion of the trial court, which cannot be too carefully exercised, and when admitted it must be viewed with caution.

Action Against Corporation—Declarations of Deceased Agent—Inadmissibility in Evidence.

5. Under subdivision 4 of section 7891, Revised Codes of 1907, as amended by Chapter 41, Laws of 1913, testimony of plaintiff concerning transactions and oral communications had with the deceased agent of a corporation was inadmissible in an action against the corporation.

Resulting Trusts—Evidence Incompatible With Pleading—Insufficiency.

6. *Held,* in an action to enforce a resulting trust in lands claimed by plaintiff as her own and possession of which she charged defendant bank with having obtained wrongfully, that her testimony showing, among other things, that she had bought the land freely and voluntarily with a full understanding of the facts relating to the transactions had between herself and the bank two years prior thereto and upon which the action was based, was so incompatible with the theory of her complaint as to warrant a finding against her.

New Trial—Motion Heard by Judge Other Than Trial Judge—Rule Governing Review of Printed Record.

7. Where a motion for new trial is heard by a district judge other than the one who tried the cause, he must be governed in his review of the case by the same rules which govern the supreme court in determining whether a new trial should be granted or not upon the inspection of the dead record.

Appeal and Error—Judgment not Warranted by Pleadings—When Appellant may not Complain.

8. Plaintiff not having been entitled to recover in any event under her pleadings and proof, the fact that the court erroneously quieted title in one of defendants to a portion of the lands sought to be recovered by her, could not injure her and she was therefore in no position to complain of the error.

*Appeal from District Court, Fergus County; Jack Briscoe and Roy E. Ayers, Judges.*

ACTION by Mary A. Marcellus against Frank E. Wright and others. From an order granting a new trial to plaintiff, defendants appeal. Reversed.

*Messrs. Templeman & Sanner* and *Messrs. Belden & De Kalb,* for Appellants, submitted a brief and one in reply to that of Respondent; *Mr. Sydney Sanner* and *Mr. H. Leonard De Kalb* argued the cause orally.

Was it proper to permit the plaintiff to testify concerning her oral transactions with the deceased Wright? The appli-

cability of Chapter 41, Laws of 1913 (sec. 7891, Rev. Codes 1907 as amended), to claims and demands of the character here involved was settled by this court in *Delmoe* v. *Long,* 35 Mont. 139. That suit, as here, was to obtain a decree declaring the defendants trustees for the plaintiff of certain real property; but in the instant case we have the additional feature of a demand for accounting and pecuniary relief. In the *Delmoe Case* the appellant, relying on *Myers* v. *Reinstein,* 67 Cal. 89, 7 Pac. 192, contended that the *cestui que trust* was a competent witness to establish the trust because the action was not upon a claim or demand against the estate within the meaning of the statute. This court held otherwise, citing *Wood* v. *Fox,* 8 Utah, 380, 32 Pac. 48, where, in addition to the trust sought to be declared, an accounting was asked. The section contains four subdivisions, two of which—subdivisions 3 and 4—pertain to the testimony here in question. It may be possible to contend that in so far as the action was proceeding against the estate of Wright, the testimony could under subdivision 3 be received in the discretion of the court, if it "appeared to the court that without the testimony of the witness injustice would be done"; but no such contention is possible as to the defendant Bank of Fergus County because subdivision 4 makes the bar of the statute absolute. Under it the plaintiff could *not lawfully* testify concerning her transactions with Wright; and her testimony, if admissible against the estate of Wright, could not be considered in determining the liability of the defendant bank. Any other conclusion would nullify the statute. In other words, if the plaintiff made out a case against the bank it would have to be by testimony of someone other than herself. This testimony having gone in under objection, no court would have any authority to consider it in relation to the bank because Wright, with whom the transactions were had and whose agency was necessary to fix liability upon the bank was an officer thereof, to-wit, its cashier. If it was possible for plaintiff to make a case at all as against the bank it could be done only by narrating "facts of direct transaction between the proposed witness [the plain-

tiff herein] and the deceased agent [Frank E. Wright] of such person or corporation [Bank of Fergus County]."

Again, under subdivision 3, the propriety of this testimony depends upon two things, *viz.*, whether the complaint states any cause of action against Frank E. Wright or his estate, and whether it appeared to the court that without the testimony injustice would be done. The complaint does not state any cause of action against Wright or his estate. But, assuming, for the moment, that we have a good complaint, what is the meaning and application of the exception, "injustice will be done"? We have searched diligently through the books to ascertain the meaning of the expression, "when it appears to the court that without the testimony of the witness injustice will be done," and we have found no statute where this exception appears outside the state of New Hampshire.

Before considering the New Hampshire decisions on this subject let us give consideration for the moment to the ridiculous idea that the statute should interpose a bar and then leave it to the discretion of the court to let down that bar whenever it was seen fit. The way the statute reads the party cannot be a witness at all as to the facts of direct transactions or oral communications. The exception to the New Hampshire statute is substantially the same as the exception found in our statute: "When it clearly appears to the court that injustice may be done without the testimony of the party in such case, he may be allowed to testify, and the ruling of the court, admitting or rejecting his testimony, may be excepted to or revised." In that state it is said that the injustice which will authorize the court to permit the witness to testify must clearly appear otherwise than from the testimony of the witness himself. (*Simpson* v. *Gafney*, 66 N. H. 261, 20 Atl. 931; *Weston* v. *Elliott*, 72 N. H. 433, 57 Atl. 336; *Sheehan* v. *Hennessey*, 65 N. H. 101, 18 Atl. 652; *Parsons* v. *Wentworth*, 73 N. H. 122, 59 Atl. 623; *Giles* v. *Smith*, 74 N. H. 238, 66 Atl. 1049; see, also, *Welch* v. *Adams*, 63 N. H. 344, 56 Am. Rep. 521, 1 Atl. 1; *Moore* v. *Taylor*, 44 N. H. 370.) Our statute says, "or when it appears to the court that without the testimony of the wit-

ness injustice will be done," while that of New Hampshire, "when it clearly appears to the court that injustice may be done without the testimony of the party, in such case he may be allowed to testify, and the ruling of the court admitting or rejecting his testimony may be excepted to and revised." The difference is purely procedural, something that affects the review but does not affect the scope of the provision.

*Mr. Ralph J. Anderson* and *Messrs. Wheeler & Baldwin,* for Respondent, submitted a brief; *Mr. Anderson* and *Mr. James H. Baldwin* argued the cause orally.

The appellants contend that it was improper to permit the respondent to testify concerning conversations and transactions had by her with the defendant Wright prior to his death. In argument they contend that the law concerning this matter was settled by this court in the case of *Delmoe* v. *Long,* 35 Mont. 139, 88 Pac. 778. That case is not in point and it is not an authority for the position assumed by the appellants in this case. The complaint in that case was filed on July 2, 1901, and the decision referred to was rendered by this court on February 11, 1907. The objection to the introduction of evidence in that case was made on the ground that "under section 3162 of the Code of Civil Procedure, as amended by the Act of 1897 (Laws 1897, p. 245), plaintiff was not a competent witness." No such objection was made in the case at bar. This Act as subsequently amended was amended by Chapter 41 of the Session Laws of 1913, page 57.

It will be observed that under the statute construed by the court in the case of *Delmoe* v. *Long,* parties or assignors of parties to an action or proceeding or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person cannot be witnesses as to any matter of fact occurring before the death of such deceased person, while under the statute of 1913, which was in force at the time the case at bar was tried, parties or assignors of parties to an action or proceeding or persons in whose behalf an action or

proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person cannot be witnesses as to the facts of direct transactions or oral communications between the proposed witness and the deceased person, except when the executor or administrator has introduced evidence thereof or when it appears to the court that without the testimony of the witness injustice will be done. In the first statute no exception is made and the rule applies in all cases. Under the second statute, there are exceptions and the conditions shown by the record in the case at bar show that the testimony offered might properly have been admitted even though the same had been properly objected to.

Appellants place great stress upon decisions rendered by the supreme court of the state of New Hampshire, on the theory that the Montana statute was taken from that of New Hampshire and that the decisions of the court of that state under the statute there in force should control the action of this court in the case at bar.

The wording of the statute of that state and of our statute is so different that appellants' contention that the latter was copied from the former is entirely without the realm of reason. Under the New Hampshire statute no evidence can be admitted unless it clearly appears to the court that injustice may be done without the testimony of the party offered as a witness and by express provision the ruling of the court admitting or rejecting the testimony may be "excepted to or revised." Under the Montana statute the evidence is properly admitted when it appears to the court that without the testimony of the witness injustice will be done.

While we are willing to concede for the sake of the argument that the New Hampshire court construed the statute of that state properly, we are impressed with the fact that in the construction of the statute of this state this court has seen fit to place the question as to whether or not the evidence shall be admitted entirely within the discretion of the trial

court. (*Roy* v. *King's Estate,* 55 Mont. 573, 179 Pac. 821; *Harwood* v. *Scott,* 57 Mont. 88, 186 Pac. 693.)

From the opinion filed by Judge Briscoe, in his decision in the case at bar, it clearly appears that unless the testimony against which the objection of the appellants is directed was admitted, injustice would be done. In that opinion, in referring to this testimony the trial judge said: ''We think from the testimony, if it could be admitted, that a resulting trust was established.'' So, under the rule announced by our statute and the construction placed thereon and the finding of the Judge who sat in the trial of the case at bar, the testimony of Mrs. Marcellus concerning conversations and transactions had by her with the defendant Wright, was properly admitted.

In reply to appellant's contention that the evidence was improperly admitted as against the defendant bank of Fergus county, we submit that the law is contrary to the view that is attempted to be imposed upon this court. Our statute provides that all persons, without exception other than is specified in the next two sections, who having organs can perceive and perceiving can make known their perceptions to others may be witnesses. Therefore, neither parties nor other persons who have an interest in the event of an action or proceeding are excluded. (Sec. 10534, Rev. Codes 1921.)

At the time this case was tried our statute in force was that section in 7891, Revised Codes of 1907 as amended by Laws of 1913, page 37. Since then the fourth subdivision of the statute has been amended. (Sec. 10535, Rev. Codes 1921.) The case at bar does not fall within the exception declared by statute to the general rule relating to the competency of witnesses. That rule as stated by this court in *Wilcox* v. *Schissler,* 55 Mont. 246, 175 Pac. 889, applies only when the testimony relates to transactions had by the witness with ''one who is known and admitted to be the agent of the principal.''

It is true that it is alleged in the complaint that at the time of the transactions here involved the defendant Wright was the cashier and managing director of the Bank of Fergus County and that he agreed on behalf of the Bank that it

would advance the money needed to purchase the property here involved at sheriff's sale as a loan to Mrs. Marcellus, and that the title acquired as a result of the sheriff's sale would be taken in his name as cashier and managing director of the defendant Bank of Fergus County as security for the payment of the loan. However, by their answer, the defendants deny that in doing what he did the defendant Wright was acting in his capacity as cashier or managing director or agent of the defendant Bank of Fergus County, or that he took the legal title to the land in controversy as cashier or managing director or agent of the defendant Bank of Fergus County, or for its use or benefit, *etc.* Having taken this position by their answer contrary to the contention they are now making, appellants are not in a position to contend that the case falls within the provisions of subdivision 4 of the statute last referred to.

The testimony of Mrs. Marcellus was also competent as against the defendant Bank of Fergus County, for the reason that prior to the granting of the motion for a new trial the legislature amended the fourth subdivision of the Act of 1913. The construction properly to be placed upon this statute would of necessity be the construction placed by this court upon subdivision 3 of the same statute, and though the statute as amended was not in force at the time of the trial, the court in acting upon the motion for new trial was justified in basing its decision upon the statute as amended. (12 C. J. 983.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In her complaint the plaintiff sets forth, in substance, that in 1899 Emit Marcellus and his wife, the plaintiff, conveyed certain lands to Louis Landt as security for a loan; that Marcellus disappeared in 1900, since which time the plaintiff has not known of his whereabouts; that on or about the year 1902, the defendant Frank E. Wright was cashier and one of the managing directors of the defendant corporation, Bank of Fergus County, and that during the period between the thirtieth day of August, 1902, and the twenty-seventh day of

December, 1904, inclusive of both dates, he was cashier and one of the managing directors of that corporation; that on or about the year 1902, and for several years prior thereto, the plaintiff was and had been accustomed to consult with the defendant Wright in his capacity as cashier and one of the managing directors of the bank, as her confidential business agent and adviser; that in his capacity as such cashier and managing director of the bank, and because of his connection therewith, she reposed full and absolute faith and confidence in the honesty, integrity, good faith and character of the defendant Wright, and, being seised of an inchoate right of dower in the lands of her husband, she consulted and advised with the defendant Frank E. Wright, in his capacity as cashier and managing director as aforesaid, on or about the month of August, 1902, with a view to securing a loan with which to redeem the lands from the mortgagee, Landt; that she told Wright, in his capacity as cashier and managing director as aforesaid, that she could borrow the money from other persons, and thereupon she asked the advice of Wright "in his capacity as cashier and managing director as aforesaid, as to whether she should borrow the money from the said persons or from the Bank of Fergus County"; that Wright in his capacity as cashier and managing director as aforesaid, advised her to permit Landt to foreclose the mortgage and "as such cashier and managing director as aforesaid, the said defendant, Frank E. Wright, did then and there agree for and on behalf of the said defendant corporation, Bank of Fergus County, that he, the said defendant, Frank E. Wright, in his capacity as cashier and managing director as aforesaid, would for and on behalf of the said defendant corporation, Bank of Fergus County, advance by way of a loan to the plaintiff herein" the money necessary to bid in the property, and that he would bid in the same in the name of himself, in his capacity as cashier and managing director as aforesaid, and for and on behalf of the defendant Bank of Fergus County; that she then and there relied upon the agreement of the defendant Wright, "in his capacity as cashier and managing director as aforesaid," and

did thereafter make no further effort to secure money else-
where to redeem the above described lands; that the agree-
ment between plaintiff and the defendant Frank E. Wright "in
his capacity as cashier and managing director as aforesaid,"
and for and on behalf of the defendant corporation, Bank of
Fergus County, as herein set forth, was an agreement to loan
to the plaintiff, Mary A. Marcellus, the money necessary to bid
in the said lands at sheriff's sale, and that the conveyance
thereof to the said defendant Frank E. Wright, as cashier
and managing director as aforesaid, and for and on behalf of
the said defendant corporation, Bank of Fergus County, was
in the nature and of the effect of a mortgage to secure the
payment of the said moneys by the plaintiff herein to the
said defendant corporation, Bank of Fergus County.

The complaint then goes on to say that in December, 1902,
pursuant to a judgment in the case of *Landt* v. *Emit Marcel-
lus and Mary A. Marcellus,* the sheriff of Fergus county of-
fered for sale at public sale the property, and "the said de-
fendant, Frank E. Wright, as cashier and managing director
as aforesaid, and for and on behalf of the corporation, Bank
of Fergus County," bid in the property for the sum of
$3,845.40, which sum was advanced by the defendant Wright as
such cashier and managing director, for and on behalf of the
defendant corporation, Bank of Fergus County, as a loan to
the plaintiff. Thereupon the sheriff executed to Wright a
certificate of sale of the lands, and although it was issued in
the name of Frank E. Wright, it was in fact a conveyance to
him as cashier and managing director of the bank, and for and
on behalf of the bank, and was in fact of the nature and effect
of a mortgage by the plaintiff to the bank. It is then alleged
that on December 27, 1904, the sheriff executed and delivered
to Wright as cashier and managing director as aforesaid, and
for and on behalf of the bank, a sheriff's deed for the prop-
erty, and that, although Wright was named therein as grantee,
the conveyance in fact was to him as cashier and managing
director of the bank; and that on the same day Wright, in
pursuance of his duties as cashier and managing director, con-

veyed the property to the bank. Plaintiff then sets forth the fact that because of the trust and confidence which she reposed in the defendant Wright, as cashier and managing director of the bank, and by reason of the things done, a resulting trust, in the nature of a mortgage, arose in favor of the plaintiff as against the bank and the defendant Wright, as cashier and managing director thereof.

Other allegations tell how the bank "in breach of its trust as mortgagee, as aforesaid, did wrongfully, falsely, frauduently and in violation of its trust as mortgagee" transfer to the defendant McDonald a portion of the property; tell of the conveyance in November, 1906, by the bank to plaintiff, by quitclaim deed, of an undivided one-half interest in and to the property which remained after the transfer to McDonald; and then it is alleged that in August, 1908, the bank executed and delivered to the plaintiff a further quitclaim deed, conveying to her the interest in the property which still remained in the bank, for $2,600, the plaintiff alleging that the lands thus conveyed were a part of the lands held in trust by the bank for the plaintiff as mortgagee; and she alleges that the sum of $2,600 was not due the bank in consideration of the conveyance, or otherwise, but was wrongfully, falsely, and fraudulently exacted and extorted from her by the bank. Other allegations need not be noted now.

The defendants answered jointly, admitting some of the allegations of the complaint, and denying others. They admit the rendition of the decree in *Landt* v. *Marcellus*, that the sheriff offered the property for sale, and "that the defendant Frank E. Wright bid in the said lands for the sum of $3,845.40, which sum was advanced by defendant Frank E. Wright, and that thereupon the said sheriff of Fergus county executed and delivered to said Wright a certificate of sale of the above described lands," and that a copy of it is annexed to the plaintiff's complaint, "but deny each and every other allegation, matter and thing contained in Paragraph VIII of plaintiff's complaint." For the sake of brevity, it may be said that there is a denial everywhere of the allegations of

plaintiff's complaint to the effect that Wright, in doing the things charged, acted for the bank.

In her reply, the plaintiff denied "that defendant Frank E. Wright advanced the sum of $3,845.50 from his own funds, but alleges that the same was advanced by him for and on behalf of the Bank of Fergus County, a corporation, defendant."

During all of the times above mentioned, Mr. Wright was living. When the case came on for trial, however, it was suggested that he had departed this life and thereupon the executrix of his will was substituted as a party defendant in his stead.

Upon the conclusion of the evidence the court submitted special findings to the jury. Afterwards, without reference to these, the court found the issues for the defendants, entering a decree that the plaintiff take nothing by this action, and ordering that the title to the land purchased by McDonald be quieted in him. The plaintiff having filed a notice of intention to move for a new trial, a bill of exceptions was settled and certified to by Honorable Jack Briscoe, the judge who tried the cause. Before the motion for a new trial was determined, Judge Briscoe's term expired, and the matter having been submitted to Honorable Roy E. Ayers, that judge, in April, 1921, made an order granting the motion, and from this order the defendants appeal.

1. Near the beginning of the trial, plaintiff being on the stand as a witness in her own behalf, objection was made against the reception of any testimony from her on the ground that under the statute (sec. 7891, Rev. Codes 1907, as amended by Laws of 1913, Chap. 41) she was incompetent to testify as against either the bank or the executrix. Counsel for the executrix also objected to the introduction of any testimony on the ground that the complaint does not state facts sufficient to constitute a cause of action against the estate of Frank E. Wright, deceased. The court overruled the objection, *pro forma* at least, remarking that the same liberality probably would not be allowed if this were not an equity case. It is

argued by counsel for plaintiff that these objections were not lodged properly, but this criticism is technical rather than substantial. The attention of the court was directed to the precise subject matter objected to, and there can be no doubt that both court and counsel understood exactly what was intended. Taking up these objections in reverse order:

(1) It is clear that the complaint did not state a cause of [1] action against the defendant Wright, nor did it against his estate. It will be observed that the pleader stated his cause of action against the defendant bank with unusual certainty and particularity. Indeed, an effort seems to have been made to exclude the idea of any personal liability upon the part of Wright. When this cause was here before (*Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714), the court, having held that the complaint stated a cause of action against the defendant bank, suggested that it was not called upon to determine whether the complaint stated a cause of action in favor of the plaintiff as against every defendant, as that question was not presented. This was not an idle suggestion. Yet no amendment was ever made. On the contrary, when the defendants alleged in their answer, in effect, that Wright bought the property and paid the money at sheriff's sale in his individual capacity, the plaintiff in her reply promptly denied it. And now being confronted with the question whether the complaint states a cause of action against the Wright estate, plaintiff's counsel say that allegation of the answer aided and cured the defect in the complaint. One may not blow hot and cold in this way. However, if the complaint were aided in the respect mentioned, it still would be far from stating a cause of action against the Wright estate.

Under the allegations of the complaint, Wright was neither a necessary nor a proper party defendant. If counsel representing him had called this very apparent misjoinder to the attention of the court by timely demurrer, unquestionably it would have been sustained.

It is also suggested that the phrases "in his capacity as [2] cashier and managing director as aforesaid," which ap-

pear so uniformly following the name "Frank E. Wright" in the complaint, could be stricken from the pleading without leaving it insufficient. The result of this would be to bring into being something which did not exist before, namely, a complaint stating a cause of action against Frank E. Wright, or rather the Wright estate. Counsel for plaintiff say in their brief that their application to amend the complaint to conform to the proof adduced in the action should have been granted. We have searched in vain for any such application. However, assuming that they did ask leave to amend at the conclusion of the testimony, the action of the trial court in denying the application under the circumstances was correct. (*Boyle* v. *Chicago, M. & St. P. Ry. Co.*, 60 Mont. 453, 199 Pac. 283.)

We are in hearty accord with counsel for plaintiff when [3] they say that in construing a pleading for the purpose of determining its effect, its allegations should be construed liberally with a view to substantial justice between the parties; but this rule should not be extended so as to permit the pleader, who has proceeded upon a certain and definite theory, to change that theory upon the trial to the injury of his adversary.

(2) At the outset of the trial the court's attention was called [4, 5] to the fact that under the provisions of subdivision 4 of section 7891, as amended, seasonable objection being made, plaintiff was prohibited from being a witness against the defendant bank with respect to direct transactions or oral communications between her and Wright, the deceased agent of the defendant corporation. Upon her pleadings, plaintiff's cause of action rested solely upon direct transactions between herself and Wright "as cashier and managing director of the defendant corporation" who acted "for and on behalf of the defendant corporation," as she alleged many times. Just before the objection was made, plaintiff had testified that Wright was cashier of the bank. In view of this situation, she receives no aid from *Wilcox* v. *Schissler*, 55 Mont. 246, 175 Pac. 889. A like objection did not exist in favor of the executrix provided it were made to

appear that without plaintiff's testimony, injustice would be done. (Subd. 3, sec. 7891, as amended; *Roy* v. *King's Estate,* 55 Mont. 567, 179 Pac. 821.)

When should a court determine to admit the testimony of the survivor against one whose "mouth is stopt with dust"? Manifestly only when it appears to the court that, in view of all the surrounding facts and circumstances, injustice will result if the testimony is excluded. While undoubtedly the power to admit and reject such testimony is reposed wisely in the sound discretion of the trial court, it cannot be too careful in exercising that discretion. Every judge has observed the freedom with which a witness testifies who knows he cannot be contradicted. Courts should scrutinize with more than usual care the quality of proof presented in such cases, and when the testimony relates to oral communications between the witness and the deceased, it must be viewed with caution. (Sec. 10672, Rev. Codes 1921; *Gauss* v. *Trump,* 48 Mont. 92, 135 Pac. 910; *Escallier* v. *Great Northern Ry. Co.,* 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *McCrimmon* v. *Murray,* 43 Mont. 457, 117 Pac. 73; *Gray* v. *Grant,* 62 Mont. 452, 206 Pac. 410.) In the *Escallier Case,* Mr. Chief Justice Brantly, in commenting upon the declarations of deceased persons, said: "Speaking generally, this character of evidence is the weakest and least satisfactory of any in persuasive value. 'With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say.' (1 Greenleaf on Evidence, 16th ed., sec. 200.)  *  *  *  Though the witness who testifies to the oral statement may be honest, his memory may be at fault, or he may have failed to comprehend and interpret the statement

as it was intended to be understood by the speaker.   *   *   *
Moreover, so easy is it to fabricate such evidence that there
is strong temptation to a dishonest, interested witness to do so.
(17 Cyc. 806, and notes.)   After enumerating these elements
of weakness, the author of the article in Cyc. on this subject,
at page 808, remarks: 'Exposed to all the infirmities just men-
tioned is the testimony to oral statements of dead men, which
is invariably subjected to the closest scrutiny in view of the
impossibility in most cases of convicting the witness of perjury
if his testimony is willfully false.' "   (And see *Sanger* v.
*Huguenel, ante,* p. 236, 211 Pac. 349.)

Doubtless, the trial court in admitting the testimony of the
plaintiff had these rules in mind.   However, it should have
been apparent to the court that the testimony of the witness
was not admissible as against the defendant bank under any
circumstances, nor was it as against the Wright estate be-
cause the complaint did not state a cause of action against the
estate.   As to the bank, there was a total failure of proof, and
as to the estate, no testimony was admissible.   (See 10 R. C. L.,
"Equity," sec. 338.)

2. In addition to what is said above, we think the court, if
[6]   the evidence had been admissible, would have been justi-
fied in finding for the defendants upon it.   Plaintiff began her
negotiations with the defendant Wright as early as the fore part
of the year 1900, shortly after the disappearance of Marcel-
lus.   The thread of her story is that her husband owned 1,200
acres of land, which was mortgaged.   She having a dower in-
terest in it, and needing money to pay the debt, consulted
Wright, who advised her to permit the mortgagee to foreclose,
upon which he (Wright) would buy in the property with his
own money advanced as a loan to her.   This so eventually the
title would be hers should any Marcellus heirs appear.   She
took Wright's advice, the mortgage was foreclosed, and in De-
cember, 1902, Wright bought in the property at sheriff's sale
and obtained the statutory certificate therefor.   On December
27, 1903, Wright obtained a sheriff's deed for the 1,200 acres
and on the same day conveyed the property by quitclaim deed

to the bank. The bank recorded both deeds two days later. In 1903 the plaintiff left Montana on Wright's advice because of her nervous condition; he told her to stay away, that she need not worry, as he would look after the ranch. In June, 1905, the bank sold 600 acres of the land to McDonald. The deed was recorded June 27, 1905. Plaintiff was in Montana for about two weeks in 1904 or 1905; for what purpose does not appear. She went away, returning in September or October, 1906, meeting Wright on her way home. He was returning from California. She knew of the sale to McDonald and reproached Wright, asking why he had sold the best of the land, leaving the worst to her. He seemed to know nothing of it. Later, in Lewistown, he told her that Hobson (president of the bank) had sold it. The next day Wright told her that he would give her a document showing that she had a right in what was left, and in pursuance of that she was given a quitclaim deed by the bank, conveying to her an undivided one-half interest in the remaining 600 acres of the land. This she said was pursuant to an agreement between herself and Wright. Noticing that the deed conveyed but an undivided one-half interest, she said to Hobson that she "wanted it all," upon which he said she was lucky to get that much. As to the question, "That is, you wanted the whole interest?" she said, "I wanted the 600 acres as Mr. Wright said, and as I knew that I was entitled to," and said she felt herself entitled to "all that was left." Asked what she did with the deed and as to whether she burned it, she answered, "Hardly," and said she placed it on record, as, when she received it, it was her intention to have a permanent record made of it in the recorder's office. She then went to Wyoming and two years later returned for the purpose of buying the remaining one-half interest in the 600 acres. Her testimony is not clear as to whether she talked with Mr. Wright on this subject, but she testified unequivocally that she returned to Lewistown with the avowed intention of purchasing from the bank the remaining one-half interest in the property. She inquired of Mr. Hobson how much he wanted for the land, and, upon being

[65 Mont. 580.]

told, agreed to buy it, upon which he said he would have a deed ready for her on the next day, and on the morrow she paid him the money which she had borrowed for that purpose and procured the deed. There was no controversy between Hobson and herself concerning the price of the land; he stated the price, which was acceptable to her, and she paid it without any question. She then took the deed and placed it upon record. Its date was August 7, 1908.

It will be remembered that in her complaint plaintiff alleged that she paid the bank $2,600 for this deed, which sum of money was not due the bank, "but was wrongfully, falsely, and fraudulently exacted and extorted" from her by the bank. There was not one word of testimony in support of this latter allegation. On the contrary, after receiving a deed to an undivided one-half interest in the remaining 600 acres of land, pursuant to an arrangement with the defendant Wright, the plaintiff after a lapse of two years freely and voluntarily and with a full understanding of the facts paid $2,600 for the remaining interest in land which she claimed to be her own. This is utterly incompatible with any theory of plaintiff's case. On cross-examination she testified, contrary to the allegations of her complaint and reply, that Wright said he would buy in the property in his own name in trust for her; he did not say he would bid it in his own name for the bank. In fact, while in her pleadings the effort seems to have been to state a cause of action against the bank, in her testimony the effort was to state her cause against Wright as an individual. The jury, in response to the interrogatory as to whether Wright took the title of the land in himself as an individual or as an officer of the bank and for the bank, answered "in himself as an individual."

3. This case came before Judge Ayers upon the same record which is before us, and necessarily he was governed in his review of the case by the same rules which govern this court in determining whether a new trial should be granted or denied upon the inspection of a dead record. (*Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *Waite* v. *Shoe-*

*maker & Co.,* 50 Mont. 264, 146 Pac. 736; *Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963; *Morgan* v. *Butte Central M. & M. Co.,* 58 Mont. 633, 194 Pac. 496; *State* v. *Stein,* 60 Mont. 441, 199 Pac. 278.)  Judge Briscoe was amply warranted in reaching the conclusion he did.  We are unable to confirm the action of Judge Ayers in granting a new trial.

4. Plaintiff contends that the court erred in ordering that [8]  the title to the 600 acres sold by the bank to McDonald be quieted in him, for the reason that the pleadings do not warrant any such action.  Technically this is correct; but it is error without prejudice, in view of the result reached.

5. Many questions argued, and well argued, by counsel, in view of what we have said hitherto, we have not found it necessary to discuss.  Suffice it is to say that we have examined the record and briefs very carefully and have been unable to reach any other conclusion than that a judgment for the defendants is the only one which the record warrants.

The order granting a new trial is reversed.

*Reversed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.