UNITED STATES BUILDING & LOAN ASSOCIATION, APPELLANT, *v.* GARDINER ET AL., RESPONDENTS.

(No. 6,640.)

(Submitted June 11, 1930.   Decided June 21, 1930.)

[289 Pac. 555.]

*Messrs. Emigh & Maury* and *Messrs. Tansil & Simmons,* for Appellant, submitted an original and a reply brief; *Mr. Emigh* and *Mr. Kenneth R. L. Simmons* argued the cause orally.

*Mr. Guy C. Derry* and *Mr. Paul B. Bowen,* for Respondents, submitted a brief; *Mr. Derry* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, United States Building & Loan Association, a corporation, has appealed from a judgment and decree in its favor and against defendants, Irene W. Gardiner, John A. Gardiner, her husband, and Suburban Homes Company, a corporation.

The complaint herein is in the usual form for the foreclosure of a mortgage on real estate; attached thereto and made a part thereof is a copy of the mortgage and note for which it was given as security.

Under the pleadings and proof, plaintiff sought to recover the principal sum of $3,886.02, with interest thereon at seven per cent per annum from May 1, 1927, $4.50 paid out for extension of abstract, $340.51, taxes paid, and $250 as a reasonable attorney's fee. The court found that it was entitled to judgment for $3,588.46 "as of the date of said trial, and no more," which amount included the sums paid for abstract and taxes, and excluded any allowance as attorney's fees. Judgment was entered in accordance with the findings; hence the appeal.

Counsel for plaintiff and for defendants agree that "the only real question involved in this appeal is the construction to be placed upon the note and mortgage sued upon in the court below."

The property involved consists of a lot in the city of Billings and the improvements thereon, owned by defendant Irene W. Gardiner, and occupied as a home by her and her husband, John A. Gardiner. In September, 1922, John A. Gardiner, acting for his wife, made application to the Building & Loan Association for membership in the organization and for a loan of $3,500 on the premises. The application provides that the loan is "to be repaid by me in 108 monthly installments of $52.83 each, which includes interest," but the amount and rate of interest are left blank. It authorizes the association, if the loan is made, to draw on the applicant each

month for the monthly payment, and the applicant guarantees "to pay this draft promptly each and every month until my loan is paid in full." The application provides "said loan to be evidenced by a note and secured by mortgage, both to be drawn on the regular printed form used by the company."

The application contains the following clause: "If this loan is granted I further agree to subscribe for at least one share of stock in said association for each $100 borrowed and to assign same to the association as additional security, and if the balance of loan is paid before maturity, to pay interest in accordance with their plan of reckoning."

The application was sent to the main office of the association. at Butte and the note and mortgage were drawn in accordance therewith; each was signed by Irene W. Gardiner and John A. Gardiner. The note reads, in part: "For value received * * * we * * * promise to pay to the order of the United States Building and Loan Association * * * Thirty-five hundred dollars, with interest thereon at the rate of six per cent per annum and one cent premium per annum on the total principal sum until fully paid. Payments to be made in 108 equal monthly installments of $52.83, * * * each installment being a payment on the principal sum ($3,500.00) and ($2,205) agreed interest and premium. * * * " "This obligation is secured by a mortgage of even date herewith and the pledge by the payer of 35 shares of the capital stock of the United States Building and Loan Association, assigned to the payee, as additional collateral security." On the note is indorsed, "Pass book acct. 11775," corresponding to the pass-book number given in the application in connection with the statement that the applicant is a member.

The mortgage recites that it is given "to secure the payment of 108 equal monthly installments of * * * $52.83, * * * each installment being for a payment on account of a loan of * * * $3,500 * * * as principal and * * * $2,205.00 * * * premium and interest thereon. * * * "

By answer the defendants alleged that, when signed, neither the note nor mortgage contained the figures "108" and "$2,205.00," and, as an affirmative defense, alleged that the loan was of $3,500 at seven per cent simple interest, figured on balances diminishing each month by reason of the application of the balance of the equal monthly installments after satisfying the interest then due. It is further alleged that defendants had paid the sum of $1,532.07 and that plaintiff is entitled to judgment only for the balance of the principal and simple interest at seven per cent, which amount defendants offered to pay before the suit was instituted, and which sum defendants have at all times been "ready and willing to pay."

Defendants failed to prove that the figures mentioned above had been inserted in the instruments after signing. Gardiner testified that, before making the loan, he ascertained that the interest would be seven per cent, and that there was no explanation made to him that the interest charge would amount to more than seven per cent. Mrs. Gardiner testified that she never intended to pay more than seven per cent. Both, however, read and signed the note and mortgage, and the answer contains no allegation of fraud or for the reformation of the instruments.

The trial court held that the note and mortgage were unambiguous and that the rate of interest to be collected was but seven per cent on the diminishing balances; that, under this method of computation, defendants were indebted to plaintiff in the sum of $3,588.46 "at the date of said trial, and no more"; that defendants had offered to pay the full amount due, which plaintiff had refused, and that defendants' inability to perform was due to such refusal; that the true intention of the parties was that the fixed monthly payments should first be applied on interest and balance on principal, and each month the interest at seven per cent should be computed on the diminished principal, thus giving a smaller amount each month to be charged for interest and an increased amount to be applied on the principal.

As the note and mortgage were prepared by plaintiff, if the meaning of their provisions is uncertain, they must be construed most strongly against the plaintiff, who caused the uncertainty. (Sec. 7545, Rev. Codes 1921; *Kasun* v. *Todevich,* 71 Mont. 315, 229 Pac. 714.)

The elementary rules governing the interpretation of contracts are clearly enunciated in *State* v. *Rosman,* 84 Mont. 207, 274 Pac. 850, 853, and need not be repeated here; suffice it to say that the intention of the parties is to be gathered from the writings, read together, and "viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit or illuminate the other."

Taking the three contracts between the parties—the note, the mortgage, and the application for the loan, relating to the same subject matter and constituting substantially parts of one transaction—together (sec. 7533, Rev. Codes 1921) by their four corners, we find the intention of the parties expressed as follows: The interest charge is seven per cent, for the provision of one per cent "premium" is but additional interest "on total principal sum until fully paid." That, by its very terms, the note declares that the interest is to be computed on the "total principal sum," while any part of the debt remains unpaid, but, lest this provision should not be understood, the drafter of the note incorporated therein the agreement that the payments are to be made regularly for 108 months, and each month the makers of the note, during the whole of that period, are to pay $52.83 and, to make assurance doubly sure that there shall be no misunderstanding, then declares that "each installment being a payment on the principal sum of ($3,500.00) and ($2,205.00) agreed interest and premium."

The source of the amount which plaintiff induced defendants to thus promise to pay as "agreed interest and premium" is clear: Seven per cent interest on the "total principal sum" until fully paid" by making equal monthly payments of $52.83 over a period of 108 months is $2,205.

It is also clear as to how the parties arrived at the agreement on the amount to be paid monthly. The loan was for nine years; the interest seven per cent on the "total principal sum" of $3,500; the interest $2,205, or a total amount to be paid of $5,705, which, divided by 108, gives the monthly payments as $52.82 plus, or $52.83.

The wording of the mortgage renders clear the intention of the parties. It recites that it is given, not to secure the payment of $3,500 and the interest thereon accruing for a definite period, but to secure the payment of 108 equal monthly installments of $52.83, "each being a payment on account of a loan of $3,500 * * * as principal and * * * $2,205.00 * * * premium and interest thereon. * * * "

The agreements in the note and mortgage follow those made when the defendant Gardiner signed the application on behalf of his wife.

"We are required to give effect to every part of the contract so as to make its terms operative, and are not permitted to make a new contract for the parties, * * * nor eliminate therefrom any of the lawful terms made by the parties themselves, unless the words employed are meaningless or involve an absurdity" (*Union Central Life Ins. Co.* v. *Jensen,* 74 Mont. 70, 237 Pac. 518, 520), and "the parties being *sui juris,* the courts are not in position to afford them relief from the effects of unwise or improvident contracts; it being rather their duty to hold the parties to the strict terms of their written agreements when the language of the contract is understandable and free from ambiguity" (*Biering* v. *Kingling,* 78 Mont. 145, 252 Pac. 872, 875).

The trial court erred in reading into the contract of the parties the provision that the interest is to be computed on the diminishing balance, and out of the contract the agreement to pay $52.83 each month for 108 months ·in satisfaction of $3,500 principal and $2,205 "agreed interest and premium."

Counsel for defendants, however, now contend that the court properly reduced the amount because the contract

is usurious. The court did not consider this matter; had it determined that the contract was enforceable only to the extent that it did not violate the statutes against usury, it would have allowed interest at ten per cent instead of seven per cent, denying recovery only for the usurious interest. (*Mc-Broom* v. *Scottish Mortgage & Land Inv. Co.,* 153 U. S. 318, 38 L. Ed. 729, 14 Sup. Ct. Rep. 852.)

We need not now determine whether or not, in view of the provisions of section 6358, Revised Codes 1921, in effect at the time the contract was made, and the exceptions to the rule as to usury declared in favor of the contracts between building and loan associations and their members (27 R. C. L. 210), the instant contract was usurious within the contemplation of our statutes. Provisions against usury are purely statutory, and their effect is to be determined from their declarations.

Our statutes merely declare that the parties to a written contract may agree upon any rate of interest up to ten per cent (sec. 7726, Rev. Codes 1921), and then provide a penalty for taking, receiving or charging a greater rate, which is the forfeiture of double the amount of interest which the note or other evidence of debt carries. Their remedial feature merely provides for an action to recover the penalty, if brought within two years and written demand for the return of interest paid is made before suit. (Sec. 7727, Id.)

Some conflict exists among the adjudications as to whether, in spite of the existence of such a statute as the above, a borrower may maintain a common-law action to recover back usurious interest which has been exacted from him; some courts holding the remedy provided by statute to be exclusive, while others hold it cumulative merely. The federal provisions prescribing a penalty of double the amount of usurious interest paid to a national bank, is declared to be exclusive (27 R. C. L. 272), and the courts are held powerless to add another penalty by holding the contract itself void (*Oates* v. *First Nat. Bank,* 100 U. S. 239, 25 L. Ed. 580).

If a borrower may maintain an action to recover back usurious interest paid, it follows, as a matter of course, that he may set off such payments against an action on his obligation, or defend on the ground that the amount claimed is, in part, illegal, and secure a reduction to the amount of the legal interest due. However, it is clear from all the authorities that, if usury may be set up as a defense to an action on the contract, it must be specially pleaded by allegations clearly showing the amount of such usurious interest claimed, unless, under the law, the presence of usury utterly vitiates the contract, which our statute does not do, and the complaint in the action clearly shows on its face that the contract in suit is usurious. (27 R. C. L. 266, and cases cited.) Here it is at least doubtful whether or not the contract in suit is usurious, and usury is not pleaded as a defense.

Defendants' offer to pay the amount due, figuring the interest at seven per cent on diminishing balances, fell short of the amount found due by the court. The offer made by John A. Gardiner was: "I could take this up and close the matter on a basis of around $3,000 which is the maximum I can raise, otherwise I am forced to accept the assistance I am offered in making this a 'test case.'" His offer was then an offer of compromise, rather than an offer to pay the amount he conceded was due. Such an offer, particularly in view of the fact that we have found that his theory of the contract, adopted by the court, was erroneous, did not justify the court in denying the plaintiff recovery of a reasonable amount as attorney's fees.

The judgment is reversed and the cause remanded to the district court of Yellowstone county, with direction to enter judgment and decree in favor of plaintiff and in conformity with this opinion.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.