SECURITY BUILDING & LOAN ASSOCIATION, RESPOND-ENT, *v.* SHALLOW ET AL., APPELLANTS.

(No. 7,210.)

(Submitted March 21, 1934. Decided April 7, 1934.)

[31 Pac. (2d) 732.]

*Mr. Frank W. Mettler,* for Appellants, submitted an original and a reply brief; *Mr. Hugh R. Adair,* of Counsel, argued the cause orally.

*Messrs. Brown, Wiggenhorn & Davis,* for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This appeal is from a judgment foreclosing a mortgage executed by the defendants to the plaintiff.

On June 15, 1923, when the contract between the parties of which the mortgage was a part was entered into, the plaintiff was, and ever since has been, a building and loan association organized under the provisions of sections 6355 to 6374, Revised Codes 1921. Section 6355 then provided, in part, that "a corporation for the purpose of raising money to be loaned among its members shall be known in this act as a 'building and loan association.'" Section 6358 provided, in part, that "such corporation shall have power to issue stock to members on such terms and conditions as the constitution and by-laws may provide. To assess and collect from members and depositors such dues, fines, interest, fees, and premium on loans made, or other assessments as may be provided for in the constitution and by-laws. Such dues, fines, premiums, fees, or other assessments shall not be deemed usury, although in excess of the legal rate of interest."

The nature and general characteristics of a building and loan association created under the foregoing and companion statutes was discussed in *First Nat. Bank* v. *Dawson County,* 66 Mont. 321, 213 Pac. 1097, and we shall not extend this opinion by renewing the discussion. In that case we observed that it is the policy of the state to favor building and loan associations, as they tend to encourage industry and thrift, the promotion of which is to the obvious interest of the state.

The statutes under which plaintiff was organized contemplated an association, mutual in character, which should make loans for the benefit of all its members, not for private profit. The borrower necessarily was a member of the association. It was contemplated that the borrower should subscribe for stock at least equal to the amount borrowed, giving a mortgage upon the land upon which a home was to be built or improved, and pledging his shares as additional security. Under the plan, by paying interest upon the note and so much a month upon the stock, the stock eventually became of sufficient value to equal the amount of the loan. Thus the member paid the loan upon the amortization plan. It was that plan which the plaintiff and defendants had in mind at

in the amount of $2,785.98, with interest from February 15, 1932, for the sum of $53.75, being for insurance premium paid by plaintiff for defendants and interest thereon, and other items, and a decree foreclosing the mortgage.

The defendants in their general answer admitted all the essential allegations of the complaint, except that they pleaded payment of the obligation. They also set up two separate defenses by way of cross-complaint and counterclaim. The first of these sets forth the note and the mortgage and gives the defendants' version of the circumstances attending the execution of the contract. Defendants do not plead fraud, deceit, mistake or any other equitable ground upon which the contract can be avoided. It is pleaded only that the defendant Katherine Shallow did not fully understand the contract when she signed the note and mortgage, but no reason is alleged justifying an avoidance of the legal effect of the note and mortgage, nor is there any pleading to support a reformation of the contract.

Defendants' main effort in this pleading seems to be to demonstrate that both the note and mortgage are ambiguous, whether taken singly or together. The pleader strives to show that the note and mortgage are ambiguous, because they fail to provide that the monthly payments shall be applied upon and retire the principal; it is said that unless the payments be so applied, the defendants had no other means of paying the principal. Upon the theory that the contract should permit the application of the payments to diminish the principal, the pleader finds the note overpaid in the sum of $12.20, and asks judgment against plaintiff for that amount.

The second affirmative defense pleaded is that the promissory note and mortgage have been paid in full, and that demand was made for a release of the mortgage, which was not complied with. Consequential damages are alleged and prayed for upon the provisions of section 8271, Revised Codes 1921.

After plaintiff had replied to the answer, cross-complaints and counterclaims, the case came on for trial. The court found for the plaintiff to the effect that at the time of trial there

was due and unpaid upon the promissory note, after the application of the book value of defendants' stock in plaintiff association, the sum of $3,064.58, and the sum of $59.13 for a premium advance for insurance, together with other items, including attorney's fee and costs, and made the usual decree respecting the sale of the property, etc. From this judgment, the defendants appealed. They assign twenty-one specifications of error, which present, as counsel for the defendants say, three questions:

(1) The interpretation generally of the note and mortgage, and particularly at the time of executing the same.

(2) The advance of the insurance item of $59.13.

(3) The defense of payment, which is founded upon the exaction of usurious interest by the plaintiff.

1. Under the head of "interpretation of note and mortgage," the defendants urge that the note is ambiguous and not consistent with the understanding of the defendants at the time it was executed. Their counsel argues that if the payments, including the amounts paid monthly as "premiums" had been applied, first, upon the current interest due and then upon the constantly diminishing balance of the principal, the note would have been overpaid at the time they ceased making payments. This is a misconception of the plan under which the loan was made, and of the contract. There is nothing new or strange in plan or contract; in fact, both are warranted by the Montana statutes which were in force at that time.

Appellants seem to rely upon *United States Building & Loan Assn.* v. *Gardiner,* 87 Mont. 586, 289 Pac. 555, 558, but the contract involved in that case is very different from the one under consideration here.

We are unable to agree with counsel for the defendants that the note is ambiguous. To the contrary, we think it is clear and explicit. It sets out clearly how the monthly payments are to be applied. The same is true of the mortgage. It is not within our province to read into the contract a provision requiring the monthly payments, after satisfying the interest

the beginning of their business relations. The applicable statutes have been repealed since the contract before us was entered into, with the provision that the repeal should not affect existing contracts (Chap. 57, Session Laws of 1927), but the new statutes do not call for any comment here.

It appears that on June 8, 1923, Oliver M. Shallow, one of the defendants, subscribed for sixty shares of "installment" stock in the plaintiff association, signing at the same time a written application for a loan of $6,000, and together with his wife, Katherine Shallow, executed a promissory note, which was secured by the stock applied for and a mortgage upon the real estate consisting of a lot in the original town site of Roundup, Montana. The instruments mentioned constituted the contract between the parties.

The note reads as follows:

"First Mortgage Real Estate Note

"No. 1014. . $6,000.00

"Billings, Montana, June 15, 1923.

"On or before ten years after date, for value received, I, we, or either of us promise to pay to the order of Security Building & Loan Association a corporation of Billings, Montana, at Billings, Montana, the sum of Six Thousand and 00/100 Dollars, with interest thereon at the rate of ten per cent per annum from date until paid, and a premium for obtaining the loan evidenced hereby of $7.50 per month from date until the said principal sum has been paid together with reasonable attorneys fees in addition to other costs in case the holder is obliged to enforce payment at law.

"This note is given in consideration of a loan made by said association to Oliver M. Shallow and Katherine Shallow, his wife, the makers hereof as a member or share holder in said association, holding sixty shares of the stock of said association certificate No. 10, which is assigned and hereby transferred as collateral hereto.

"And it is hereby covenanted and agreed that monthly payments of not less than Eighty-seven and 50/100 Dollars ($87.50) shall be made to said association on or before the

502

1st day of each month commencing with the month of July, 1923, until this note is fully paid, which monthly payments together with any other sums paid hereon at any time may be applied as follows:

"1. To the re-payment of taxes, insurance premiums and other advances made by the association in protection of this loan.

"2. To the payment of interest and interest upon delinquent interest as herein specified.

"3. To the payment of the premium.

"4. To payment on the maker's shares in said association.

"If default be made in said monthly payments whereby three or more payments become delinquent or if default be made in any of the covenants of the mortgage securing this note then and in that event, at the option of the said association, the principal sum as evidenced hereby shall at once, without notice, become immediately due and payable and said association shall thereupon be authorized to declare the maker's stock or shares in said association forfeited to the association and the book value of said shares may be credited and applied upon such amount so declared due and payable before enforcing payment thereof without further notice or demand and without requiring the sale or offering for sale of said shares as an ordinary pledge.

"Delinquent interest shall bear interest from the date when due at the rate of ten per cent per annum.

"OLIVER M. SHALLOW.

"KATHERINE SHALLOW."

Defendants made monthly payments upon the principal sum to July 15, 1931, and upon the premium to April 1, 1931. They did not pay anything further. On February 15, 1932, the book value of the shares was $3,660.02. Availing itself of the provisions of the contract, the plaintiff declared the shares forfeited and credited the value thereof upon the promissory note. After the application of the value thereof, there appeared to be due upon the note the sum of $2,785.98. Thereupon plaintiff brought this suit to obtain judgment on the note

due, to be applied upon the diminishing balances of the principal.

The following language from *Fidelity Savings Assn.* v. *Bank of Commerce*, 12 Wyo. 315, 75 Pac. 448, 457, in which the authorities are connoted and discussed, is applicable to the conditions presented on this feature of the case at bar: "As a necessary result of the principle that a borrowing stockholder continues to be a member of the association, and to be the primary owner of the shares in his name, the prevailing doctrine is that payments of dues upon stock are not *ipso facto* payments upon the debt, and are not to be regarded as partial payments operating as a *pro tanto* reduction of the mortgage debt so as to periodically reduce the interest agreed to be paid. (Endlich on Bldg. Assoc., secs. 385, 447 et seq.; 4 Ency. L. 1057, 1058; 6 Cyc. 154; Thompson on Bldg. Assoc., sec. 210.) Such payments are, it is true, sooner or later to be used toward the extinguishment of the debt, or, to state the rule with greater accuracy, the borrower is entitled to a credit upon his indebtedness of the value of his shares whenever he undertakes to redeem from the mortgage, to be determined according to the reasonable rules and by-laws of the association; and ordinarily the understanding and contract, as well as the expectation, is that the stock payments with accumulated profits will cause the stock ultimately to mature and equal in value the amount of the indebtedness, whereupon the former will be appropriated by the association and the debt become extinguished." And see *First Nat. Bank* v. *County of Dawson,* supra; *Manship* v. *New South B. & L. Assn.,* (C. C.) 110 Fed. 845; *Boleman* v. *Citizens' Loan & Building Assn.,* 114 Wis. 217, 90 N. W. 199; Thornton & Blackledge on Building & Loan Associations, p. 243; 4 R. C. L. 367.

2. It is useless for defendants to contend that the court was not justified in allowing the item paid by plaintiff for insurance upon the property. The mortgage itself provides that the defendants shall keep the buildings and improvements placed on the premises insured against fire, with loss, if any, payable to the association; and it is specifically set forth in the

promissory note that a portion of the $87.50 payable monthly may be applied to the repayment of insurance premiums and other advances by the association in protection of the loan.

3. The defense of payment based upon the theory that the plaintiff had exacted usurious payments is without foundation, for the reason that if defendants intended to assert usury as a defense, it was incumbent upon them to plead it, which they did not do. The only suggestion of usury is contained in paragraph 7 of the first "cross-complaint and counterclaim" wherein it is averred: "That defendants have fully complied with and carried out all of the provisions of the said note and the said mortgage, as so understood by them, and made all of the payments as required of them by the said instruments, up to and including a final payment made by them on August 26, 1931, amounting to the sum of $175.00, the same having been demanded by plaintiff, and that the said sum was sufficient to pay in full, and did pay in full, the said note and mortgage, and $12.20 in excess of such payment in full, which latter sum, so demanded and received by plaintiff constituted and was usurious and unlawful interest, and in excess of the legal rate of ten per cent, as allowed by law."

As was said in *United States Building & Loan Assn.* v. *Gardiner,* supra, "It is clear from all the authorities that, if usury may be set up as a defense to an action on the contract, it must be specially pleaded by allegations clearly showing the amount of such usurious interest claimed, unless under the law the presence of usury utterly vitiates the contract, which our statute does not do, and the complaint in the action clearly shows on its face that the contract in suit is usurious. (27 R. C. L. 266, and cases cited.)" In other words, unless the contract appears upon its face to be usurious, it is incumbent upon the defendants to plead the facts showing that it is such. The defendants entered into the contract, which presents clearly the time the installment payments shall be made and how they shall be applied, with particular reference to interest payable on the note. If defendants had kept up their pay-

ments upon the contract, the full amount of the note eventually would have been paid pursuant to the amortization plan.

If we were to assume (for the sake of illustration only) that the by-laws of the association were deficient to such an extent as not to permit the exaction of monthly premium payments by reason of failure to take advantage of the statute, the defendants, if they desired to present the proposition as a defense, must set forth the facts. In view of the contract we cannot presume that such a by-law does not exist. The burden was on the defendants to plead usury, and then to sustain their allegations by proof. Such testimony, as the defendants gave to sustain their theory of usury was admitted over the objection of the plaintiff, whose counsel objected to the sufficiency of the affirmative defenses at the beginning of the introduction of testimony by defendants. Plaintiff's counsel made repeated and specific objections to defendants' evidence thereafter, fully protecting plaintiff's rights.

Counsel for the defendants was sensible of the deficiency in the pleading, and at the close of the case, addressing the court, said: "May I ask leave to amend the answer to conform to the proof and ask for a reformation of the contract, if that is necessary, and to make plain that usury is pleaded, and that the penalty for usury is asked for in this case?" To which the court remarked that counsel "inferred" that some testimony showing usury had been admitted, and denied leave to amend.

It is a well-established rule in this jurisdiction that after the close of the evidence a motion to conform the pleadings to the proof cannot be granted where the admission of the evidence was properly objected to when it was offered. (*Boyle v. Chicago, M. & St. Paul R. Co.*, 60 Mont. 453, 199 Pac. 283; *Marcellus v. Wright*, 65 Mont. 580, 212 Pac. 299.) The objection to the sufficiency of the affirmative answers when defendants opened their case in defense put them on guard. When they did not then avail themselves of the privilege of asking leave to amend, thereby invoking the court's discretion,

but chose to proceed without amendment to the close of the trial, their motion to amend came too late.

In these circumstances it cannot be said that the defects in defendants' pleadings were cured by the introduction of evidence (*Armstrong* · v. *Billings,* 86 Mont. 228, 283 Pac. 226), even if we were to concede, which we do not, that the evidence in the absence of objection was sufficient to warrant such an amendment; we go further, and say that in the light of section 6358, supra, and upon the evidence, the contract was not usurious, and the plaintiff did not resort to usury.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. JUSTICE ANGSTMAN, Dissenting in Part: I agree with most, but not all, that is said in the foregoing opinion. I disagree particularly with the final disposition of the case by affirming the judgment.

Laws exempting building and loan associations from the operation of usury laws are generally held to be valid. (4 R. C. L. 375; 9 C. J. 974, note 59; notes in 18 L. R. A. 133; 26 L. R. A. (n. s.) 1135; Ann. Cas. 1916E, 232.) But "building and loan associations are not invested by statute with unrestricted power to enter into private contracts with individual shareholders for interest or premium without regard to the general laws limiting the rate of interest which may be charged. Only by observing the provisions of the statute may a building and loan association obtain a higher return upon the money which it lends to its shareholders than is otherwise permitted by law." (*Anna Loan & Improvement Co.* v. *Dorris,* 342 Ill. 567, 174 N. E. 865, 867, 74 A. L. R. 968.)

The exemption created by section 6358 has to do with dues, fines, premiums, fees or other assessments "as may be provided for in the constitution and by-laws." Here, though a portion of the by-laws was admitted in evidence at the instance of plaintiff, none was offered showing that the plaintiff had

provided for the payment of any premium. To receive the exemption privilege it was incumbent upon plaintiff to comply strictly with the statute prescribing a premium in its constitution and by-laws. (See note in 74 A. L. R. 974 et seq.)

As said in the case of *Borrowers' & Investors' Bldg. Assn.* v. *Eklund,* 190 Ill. 257, 60 N. E. 521, 524, 52 L. R. A. 637: "The privilege to contract for premiums accorded to these associations is not an unbridled license to exact any rate of premiums the present situation or stress of the affairs of each individual borrower may induce him to consent or agree to pay. On the contrary, if they would avoid the imputation of usury, and the forfeiture of all interest consequent thereupon, they must, whenever they have as much as $100 in the treasury, either publicly offer the same at a regular meeting of the board of directors, to be loaned to the stockholder who will pay the greater premium therefor, or they must fix by a by-law a uniform rate of premium at which their stockholders may borrow their money, in order as their applications are filed, and without distinction between stockholders."

Defendants attempted to plead usury. They alleged that to the extent of $12.20 already paid by defendants to plaintiff, the same was usurious and in excess of the legal rate of interest. This was tantamount to an averment that the sum sued for by plaintiff was also usurious. Conceding that their answer did not sufficiently allege usury on the ground here discussed, I think under the circumstances they should be given the opportunity to do so if they so desire, and if they can allege that plaintiff did not comply strictly with the statute in making provision for the exaction of a premium on its loans.

Here plaintiff at the opening of defendants' case objected to the introduction of any evidence in support of the affirmative defenses in the answer, on the ground that they did not state facts sufficient to constitute a defense. The objection was overruled. Conceding that it should have been sustained, defendants doubtless, had it been sustained, would have asked for and obtained leave to amend the answer. This they were

not required to do under the circumstances. They were led to believe their defense of usury was sufficiently alleged. At the close of the entire case defendants requested leave to amend the answer "to make plain that usury is pleaded, and that the penalty for usury is asked for in this case." This request was denied.

I think in order to accomplish full justice in this case, we should exercise the powers conferred by section 8805, Revised Codes 1921, which in part provides that "in equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered."

Here it is shown that defendants have paid back to plaintiff $8,312.50 on the loan of $6,000. If the transaction were usurious, they should not now be deprived of the mortgaged property. Whether or not it was usurious depends upon whether plaintiff had made provision for the payment of a premium in its constitution and by-laws. The evidence leaves this point at least doubtful. The evidence was peculiarly within the knowledge of plaintiff. Defendants, if so advised, should be permitted to raise the question by proper plea, and further evidence on the point should be taken. This course of procedure is not without precedent. Thus it is said in 4 C. J. 1195, that "on reversal and remand for new trial or other appropriate proceedings, an appellate court may, in furtherance of justice, direct that the parties be given leave to amend their pleadings, where the pleadings are defective but not fatally so. Thus, on reversal and remand, it is frequently ordered that plaintiff or defendant be given an opportunity to amend his pleadings; and the rule that an appellate court may direct the lower court to allow an amendment is especially applicable on reversal of an order sustaining or overruling a demurrer to a pleading." And in 4 C. J. 1116, it is said that "the appellate court may

remand the case to allow further pleadings to be filed or to give opportunity to amend the pleadings. This may be done where the record is in an unsatisfactory state and in furtherance of the ends of justice, or, as it has been held, to enable the court to decide the case properly on the merits, and especially where it appears that plaintiff is entitled to some relief.''

Plaintiff itself introduced such parts of its by-laws as were necessary to show that it was a building and loan association. It introduced by-laws showing how its loans were made. It undertook, at least partially, to negative the claim of usury. It did not go far enough in that direction. It is singular that if it had a by-law dealing with premiums, it was not introduced. The plaintiff's own evidence came so near to proving usury that I think, in furtherance of the ends of justice, further evidence on the point as to whether plaintiff's constitution and by-laws made provision for a premium should be taken.

If it can be shown that the contract is usurious for want of strict compliance with section 6358, that fact will defeat the foreclosure of the mortgage. (*Anna Loan & Improvement Co.* v. *Dorris,* supra.)