WILCOX, APPELLANT, *v.* SCHISSLER ET AL., RESPONDENTS.

(No. 3,935.)

(Submitted September 17, 1918.   Decided November 4, 1918.)

[175 Pac. 889.]

*Contracts—Mortgages—Fraud—Defenses—Evidence—Equity— Jury Trial—Special Findings—General Verdict.*

Equity—Jury Trial—Special Findings—General Verdict.
   1.   Where a jury is called in an equity case to assist in the determination of controverted questions of fact, the trial judge should not submit a general verdict to them, but require them to make special findings in response to interrogatories propounded.
Fraud—Contracts—When Relief not to be Granted.
   2.   Neither law nor equity will grant relief to one who enters into a written contract without reading it, if the other party to it is not guilty of deceit or false representations as to its contents by means of which the plaintiff is put off his guard.
   [As to carelessness as a bar to relief from fraud, see note in 32 Am. St. Rep. 384.]
Same—Defenses.
   3.   A person cannot procure a contract in his favor by fraud, and then bar a defense to it on the ground that, had not the other party been so ignorant and negligent, he could not have succeeded in deceiving him.
Same—Mortgage Foreclosure—Defenses.
   4.   In a suit to foreclose a mortgage, evidence *held* to support a finding that it and the promissory note which it secured were procured by the fraud of plaintiff's brother and uncle of defendant, with plaintiff's knowledge.
Same—Transaction With Deceased Person—Evidence—Admissibility.
   5.   In a suit to foreclose a mortgage alleged to have been procured by the fraud of plaintiff's associate, since deceased, defendant could

---

On failure to read contract as affecting right to relief therefrom on the ground of fraud of other party, see notes in 6 L. R. A. (n. s.) 463; L. R. A. 1917F, 637.

not be rendered incompetent to testify as to transactions with the associate by the unsupported assertion that he was plaintiff's agent and that therefore, under subdivision 4 of section 1, Chapter 41, Laws of 1913, evidence of declarations made by or communications had with such agent was inadmissible.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

ACTION by Mary A. Wilcox against Helen Schissler and another to foreclose mortgage. From a judgment for defendants and denial of a new trial, plaintiff appeals. Affirmed.

*Messrs. Goddard & Clark* and *Mr. E. E. Collins,* for Appellant, submitted a brief; *Mr. O. F. Goddard* argued the cause orally.

The evidence shows that the plaintiff took no part whatever in any false or fraudulent representations made by Eugene F. Gateley, and no hint is suggested that the plaintiff had any knowledge that any false representations were being made. Personally, she was innocent, and declared to be so by the defendants themselves. The burden of proving fraud is always upon the one alleging it. (*Robinson* v. *Glass,* 94 Ind. 211, 221; *Thatcher* v. *Edsall,* 2 Cal. Unrep. 331, 4 Pac. 202; *Lowe* v. *Higginbotham* (Kan.), 13 Pac. 790; *Lindsay* v. *Kroeger,* 37 Mont. 231, 95 Pac. 839; *Harrington* v. *Butte & B. Min. Co.,* 27 Mont. 1, 69 Pac. 102.)

The court erred in overruling plaintiff's objection to questions propounded by defendants' counsel to the witness Helen Schissler, whereby she was permitted to testify to conversations had between Gateley, who was then deceased, and who was at the time of the making of the alleged misrepresentations acting as general agent for the plaintiff, which conversations were had without the presence of the plaintiff and of which she had no knowledge. (Laws 1913, Chap. 41.) The statute applies to communications and transactions concerning written documents, as well as to verbal transactions with or statements by the deceased. (*Mattoon* v. *Young,* 45 N. Y. 696; *Hedges* v. *Williams,*

26 Tex. Civ. 551, 64 S. W. 76; *Shelden* v. *Michigan etc. Fire Ins. Co.,* 124 Mich. 303, 82 N. W. 1068.)

Where a party claiming to have been deceived to his prejudice by false representations has investigated for himself or the means were at hand to ascertain the truth or falsity of any representations made to him, his reliance thereon afford no ground for relief. Mere verbal representations of what a written contract contains, when the written contract is in the hands of the party to be bound, do not affect the liability of such parties if they sign the written contract. (*Bedell* v. *Herring,* 77 Cal. 572, 11 Am. St. Rep. 307, 20 Pac. 129; *Grinrod* v. *Anglo-American Bond Co.,* 34 Mont. 169, 85 Pac. 891, at 894; *McCormick* v. *Hubbell,* 4 Mont. 87, 5 Pac. 314; *Pierce* v. *Ten Eyck,* 9 Mont. 349, 23 Pac. 423, 424; *Ort* v. *Fowler,* 31 Kan. 478, 47 Am. Rep. 501, 2 Pac. 580; *Thatcher* v. *Edsall,* 2 Cal. Unrep. 331, 4 Pac. 202; *Slaughter's Admr.* v. *Gerson,* 80 U. S. 379, 20 L. Ed. 627; *Osborne* v. *Missouri Pac. Ry. Co.,* 71 Neb. 180, 98 N. W. 685; *Cagney* v. *Cuson,* 77 Ind. 494; *Farnsworth* v. *Duffner,* 142 U. S. 43, 35 L. Ed. 931, 12 Sup. Ct. Rep. 164; *Long* v. *Warren,* 68 N. Y. 426.)

*Mr. E. E. Enterline* and *Messrs. Johnston & Coleman,* for Respondents, submitted a brief; *Mr. Enterline* argued the cause orally.

Because of the fact that a trick or artifice was resorted to by Gateley for the purpose of preventing respondents from reading the note and mortgage or having the contents explained to them by the notary; and because confidential relations existed between Gateley and the respondents which excused respondents from reading the note and mortgage and which permitted them to rely upon the statements made by Gateley concerning their contents,—the rule contended for by appellant, does not apply. (See *Wells* v. *Adams,* 88 Mo. App. 215; *Dashiel* v. *Harshman,* 113 Iowa, 283, 85 N. W. 85; *Castenholz* v. *Heller,* 82 Wis. 30, 51 N. W. 432; *Stevens* v. *Reilly* (Okl.), 156 Pac. 157; *Smith & Co.* v. *Kimble,* 31 S. D. 18, Ann. Cas. 1916A, 497, 139

N. W. 348; *Graham* v. *Thompson,* 55 Ark. 296, 299, 29 Am. St. Rep. 40, 18 S. W. 58; *Lotter* v. *Knospe,* 144 Wis. 426, 129 N. W. 614; 20 Cyc. 34.)

The evidence showing the relationship between the parties is undisputed and the trust and confidence reposed in Gateley as testified to by respondents are not controverted. Under the facts and circumstances as disclosed by the record in this case and from the principles announced in the foregoing authorities the respondents cannot be legally held liable upon the note and mortgage in question.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to obtain foreclosure of a mortgage upon lands situate in Yellowstone county, alleged to have been executed by defendants to plaintiff on September 21, 1908, to secure the payment of a promissory note for $1,296. The note is of even date with the mortgage, and by its terms is made payable two years thereafter, with interest at the rate of ten per cent per annum, payable annually. The plaintiff also seeks recovery of taxes on the lands, which she alleges she paid for the years 1909–1914, inclusive, with interest on each payment from the date thereof, and to have the several payments, with the interest thereon, declared a charge upon the lands, to be paid out of the proceeds derived from their sale. In their separate answers the defendants, after denying the material allegations of the complaint, allege two defenses: (1) That they were induced to execute the note and mortgage set forth in the complaint by false and fraudulent representations, made to them by one Eugene T. Gateley, which they believed, and upon which they relied, that the instruments which they were signing were merely a guaranty that they would at a subsequent date execute to him a lease upon the lands described in the mortgage, and that plaintiff acted in concert and connivance with Gateley in order to secure the execution of the note and mortgage to herself. (2) That the note and mortgage were wholly without considera-

tion, in that neither of the defendants, at the time of their execution or at any other time, received from the plaintiff the sum of $1,296, or any part thereof, or any other consideration whatever. Plaintiff by reply joined issue on these affirmative defenses. The trial court submitted the issues thus framed to a jury which returned a general verdict in favor of the defendants. Plaintiff has appealed from the judgment entered thereon, and from an order denying her motion for a new trial.

Before taking up the contentions made by counsel for plaintiff, [1] we remark that this case is one of strictly equitable cognizance. It was therefore exclusively the province of the trial judge to find the facts and declare the rights of the parties. It was proper for him, if he deemed it desirable to do so, to call a jury to his assistance, in an advisory capacity, upon controverted questions of fact, the solution of which depended upon the credibility of the witnesses. Having called the jury, however, he should have required them to make special findings of fact in response to interrogatories propounded to them, but should not have submitted a general verdict. (*Bordeaux* v. *Bordeaux,* 43 Mont. 102, 115 Pac. 25; *Lenahan* v. *Casey,* 46 Mont. 367, 128 Pac. 601; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071.) From the fact that we find nothing in the briefs of counsel on either side touching the character of the case, we may presume that they regarded it as one at law. For the purposes of these appeals, therefore, we shall accept their theory of it, and determine the merits of the appeals accordingly.

The principal assignment argued by counsel is that the evidence is insufficient to justify the verdict. The plaintiff being sworn in her own behalf, testified that in 1906 she was living in Chicago; that she and Eugene T. Gateley, her brother, had come out to Montana in September of that year to make homestead entries upon the public lands; that the defendant Helen Schissler, her niece, then Helen Saunders, desiring to acquire lands in the same way, plaintiff loaned her money for her railroad fare to Montana and to pay her filing fees in the land office; that plaintiff also advanced her enough money to make the improve-

ments necessary to enable her to acquire patent and to bear her living expenses during her residence on the land; that the moneys advanced to her, except that for railroad fare, were paid by plaintiff through Gateley; that on September 21, 1908, when she was ready to commute her homestead, she came to Billings, where plaintiff then was; that plaintiff paid to the receiver of the land office $486, the amount due the government; that plaintiff, with the two defendants and Gateley, then went to the office of R. E. Noyes, an attorney, where the defendants executed the note and mortgage and delivered them to her, the principal of the note representing all the various sums advanced to Helen Schissler; and that plaintiff then filed the mortgage for record with the county clerk.

There were introduced and read to the jury the depositions of Eleanor W. Gateley, another niece of plaintiff, and Mr. Noyes, the attorney, for the purpose of corroboration; but neither disclosed anything of evidentiary value, Mr. Noyes not having any recollection as to who was present or what transpired when the instruments were executed.

Helen Schissler gave the following narrative of the facts relating to the execution of the note and mortgage: "Early in December, 1906, she came to Billings, Yellowstone county, for the purpose of making a homestead entry of the lands described in the mortgage. This was in pursuance of an agreement between her and her uncle, Gateley, that he was to pay the entry fees, bear the expense of the improvements necessary to enable her to secure patent, and, when the time came to make final payment to the government, to furnish the money for the purpose. In return for these advancements by him, he was to have the use of the lands until patent should issue, and then a lease of them for three years; he to pay the taxes during the term. She took up her residence on the lands in May, 1907. Gateley made the promised advancements. On September 21, 1908, having made the required proof, she was permitted to make commuted entry upon payment of $486 in cash. In the meantime she had married her codefendant. In order to make the payment, she

came with her husband to Billings, where Gateley and the plaintiff then were. Late in the afternoon Gateley met her and her husband at a hotel where they were stopping, and represented to them that, though he had every confidence in her, since she was married it would be necessary that they should give him a written guaranty that the lease would be executed upon the issuance of the patent as she had agreed. He explained to them that the guaranty had already been drafted by an attorney (Mr. Noyes) for their signatures, but that it would not appear of record. He thereupon requested the two to accompany him to the office of Mr. Noyes. When they reached the office, Mr. Noyes presented to them for their signatures two papers, which they subsequently ascertained were the note and mortgage. He inquired of them if they were acquainted with the contents of the papers. Gateley thereupon interposed, and, answering for them, said: "Yes, yes; I have explained it all to them. We must hurry and get to the land office before it closes." Mrs. Schissler also told the attorney that her uncle had explained the papers to them. Thereupon, without reading them, they signed the note and mortgage and acknowledged the latter, relying upon Gateley's statement as to the purpose to be served by them. He then told them to go to the land office, where they would meet the plaintiff, to whom he had given the money to make final payment, telling Mrs. Schissler at the same time that he deemed it unsafe for her to carry it with her. As they were leaving him, she inquired of him what was the purpose of the small piece of paper (the note) which he had required her and her husband to sign. He replied that it was "merely a form, merely forfeiture for the land and improvements if I did not live up to my agreement with him." At the land office they met plaintiff, who paid the receiver the money and took the receipt. Mrs. Schissler allowed plaintiff to take the receipt, because she supposed plaintiff would desire to show Gateley that she had made proper disposition of the money he had intrusted to her. The final certificate of entry was issued to Mrs. Schissler on November 30 thereafter. On December 8 she executed a formal

lease to Gateley, in accordance with her agreement, for a term of three years for a consideration of $1 and other "good and sufficient considerations to. him [her] in hand paid and to be paid." Under this lease he held possession until his death on January 18, 1914. Mrs. Schissler, presuming that Gateley was paying the taxes according to the terms of his agreement with her, did not make any inquiry about them until after his death. Upon her offer to pay them for the year 1914, she was informed by the county treasurer that they had been paid by the plaintiff. She had no knowledge of the existence of the note and mortgage until about two months after the death of Gateley, when she learned of them by common report through a friend. No demand was ever made upon her by Gateley, nor by the plaintiff, for payment of the note or the annual interest until January 7, 1915, when demand for payment was made by plaintiff through one of her present counsel. Never at any time, either when Mrs. Schissler made her homestead entry or at any time thereafter, did she borrow or receive money from plaintiff in any amount or for any purpose, or have any money transactions with her, other than the payment of $486 for the final entry; nor did she ever promise Gateley, or the plaintiff, that she would execute a note and mortgage to either of them for any purpose. She testified, further, that she was induced to sign the papers without reading them by her belief in and reliance upon the truth of Gateley's statements as to their purpose, that if she had known that the papers were a note and mortgage she would not have signed them, and that she left them with the attorney and never saw them again until they were shown to her during the trial.

The testimony of Mr. Schissler agreed in all substantial particulars with that of Mrs. Schissler with reference to the conversation had with Gateley at the hotel, the subsequent execution of the note and mortgage, the statements made by Gateley at that time and as they left the attorney's office, and the payment of the money at the land office by the plaintiff. He had never had any dealings with the plaintiff.

Starting out with the proposition that the burden of proving
[2]   fraud is upon him who alleges it, counsel assert that there
is not a syllable of evidence tending to connect the plaintiff with
any false representations made to the defendants by Gateley, or
that she had any knowledge of them.   This argument impliedly
assumes that Gateley was guilty of a fraud upon the defend-
ants.   This assumption is clearly correct.   It is the general rule
that a party will not be relieved, either by a court of equity or
a court of law, from the consequences of his own inattention
and carelessness.   If it appears that he who claims to have been
deceived to his prejudice has investigated for himself, or that
the means were in his hands to ascertain the truth or falsity of
any representations made to him, he may not be granted relief
on the ground that he has been misled to his prejudice.   (*Grind-
rod* v. *Anglo-American Bond Co.*, 34 Mont. 169, 85 Pac. 891.)
The rule applies to one who executes an instrument without
reading it, when he has it in his hands and negligently fails to
ascertain the contents of it; the other party not being guilty
of any deceit or false representation as to its contents, by means
of which he is put off his guard.

In ordinary business transactions parties are expected and
required to use reasonable care and prudence, and not rely upon
those with whom they deal to care for and protect their inter-
ests.   (*Grindrod* v. *Anglo-American Bond Co., supra.*)   But, as
said by Justice Cassoday, in *Warder etc. Co.* v. *Whitish*, 77 Wis.
[3]   430, 46 N. W. 540: "Certainly no one will contend that a
person can procure the signature of a party to a contract by
false representations, and then enforce the contract on the
ground that, had the party so deceived been more vigilant, he
would have discovered the fraud in time to have withheld his
signature from the contract.   In other words, a person cannot
procure a contract in his favor by fraud, and then bar a defense
to it on the ground that, had not the other party been so igno-
rant or negligent, he could not have succeeded in deceiving
him."   The rule thus stated has the sanction of the court gen-
erally.   (*Como Orchard Land Co.* v. *Markham*, 54 Mont. 438,

171 Pac. 274; *Dashiel* v. *Harshman,* 113 Iowa, 283, 85 N. W. 85; *Lotter* v. *Knospe,* 144 Wis. 426, 129 N. W. 614; *Cummings* v. *Ross,* 90 Cal. 68, 27 Pac. 62; *Cole Bros.* v. *Williams,* 12 Neb. 440, 11 N. W. 875; *Krenz* v. *Lee,* 104 Minn. 455, 116 N. W. 832; *Western Mfg. Co.* v. *Cotton & Long,* 126 Ky. 749, 12 L. R. A. (N. S.) 427, 104 S. W. 758; *Smith* v. *Kimble,* 31 S. D. 18, Ann. Cas. 1916A, 497, 139 N. W. 348; *Albany Savings Inst.* v. *Burdick,* 87 N. Y. 40; *Stevens* v. *Reilly* (Okl.), 156 Pac. 157; *Graham* v. *Thompson,* 55 Ark. 296, 29 Am. St. Rep. 40, 18 S. W. 58.)

Accepting the testimony of the defendants as true—as did the jury—there can be no doubt, under the rule announced in the [4] cases cited above, that Gateley was guilty of a palpable fraud. He was the uncle of Mrs. Schissler. He had been advancing her money to enable her to secure title to her homestead, stipulating for the use of it before and after final entry to reimburse himself for his expenditures for her. Under the circumstances it was but natural that she had the utmost confidence in him and felt entirely secure in reposing trust in him. It was natural that she was ready to furnish him any guaranty demanded by him to show that she was ready to discharge her obligation to him; and when he requested herself and her husband to execute the contract for the lease, after explaining the purpose of it at the hotel, it would have been strange indeed that, when they were asked by Noyes if they knew the contents of the papers they were about to execute, and he interposed by saying that he had explained all to them, they should have stopped to read them or question the truth of his statement.

That the plaintiff was cognizant of the fraud is, we think, a legitimate inference from all the evidence. She was waiting at the land office to pay the receiver the money which had been intrusted to her by Gateley after the defendants had paid their visit to Noyes' office. She later received the note and mortgage. Add to this that Mrs. Schissler had not at any time obtained any money for any purpose from plaintiff, that plaintiff did not demand payment of the note or the annual interest for nearly five years after it fell due, and then only after the death of Gate-

ley, and the conclusion seems unavoidable that she had full knowledge of Gateley's fraud. Besides, she testified that she was present at Mr. Noyes' office when the papers were signed. There is a direct conflict between her statement and that of defendants on this point; but presuming, as we may, that the jury found that she was present and heard the representations made by Gateley, the doubt that we might otherwise entertain as to her knowledge of his fraud vanishes. Aside from these considerations, since she never advanced any money to Mrs. Schissler, the latter received no consideration for the note and mortgage. The verdict is justified by the evidence, either on the ground of fraud, or upon the ground that the note and mortgage were wholly without consideration.

Of the several other assignments, only one is of sufficient merit to deserve special notice. During her examination, Mrs. Schissler was permitted, over objection by plaintiff's counsel, to relate [5] the conversation Gateley had with her and her husband before they went to Mr. Noyes' office. The ground of the objection was that, since it appeared from the testimony of plaintiff that Gateley, then dead, had been the agent of plaintiff in her dealings with Mrs. Schissler, the latter was incompetent under the statute to testify to any conversation or transaction had with him. Section 7891, Revised Codes, as amended by Laws of 1913, Chapter 41, section 1, declares: "The following persons cannot be witnesses: * * * 4. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against any person or corporation, as to the facts of direct transaction or oral communication between the proposed witness and the deceased agent, of such person or corporation, and between such proposed witness and any deceased officer of such corporation." The purpose of the legislature in enacting this provision was to declare a party dealing with an agent incompetent to testify as to any transaction or conversation had with the agent, in any action or proceeding against the principal, the effect of which would be to render the principal liable by reason of the particular act or

declaration of his agent. In other words, principals are given the same protection as is accorded to estates of deceased persons under subdivision 3 of the same Act, except that under subdivision 3 the executor or administrator waives his right to object if he introduces evidence of the transaction or communication, or it appears to the court that without the testimony of the witness injustice will be done, whereas subdivision 4 does not provide for any exception. As subdivision 3 applies only to parties to transactions and proceedings against an executor or administrator *eo nomine* in his official capacity only, subdivision 4 must necessarily apply to parties who seek to charge a principal by means of transactions or declarations of one who is known and admitted to be an agent of the principal. It certainly cannot be conceived that the legislature intended to declare that a party to an action may render the adverse party incompetent to testify, by his mere unsupported assertion that the person with reference to whose transaction or declaration the adverse party is questioned was his agent. All persons who come within the definition laid down in section 7890 of the Revised Codes are competent witnesses. Section 7891, as amended, declares the exceptions. This may not be extended by construction to include persons not falling within its express terms. From this point of view, Mrs. Schissler did not come within any of the exceptions and therefore was competent to testify. There is no merit in the contention.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.