BAILEY, Appellant, *v.* HANSEN, Respondent.

(No. 7,736.)

(Submitted November 10, 1937.   Decided December 6, 1937.)

[74 Pac. (2d) 438.].

*Mr. F. F. Haynes,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. George W. Farr,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ·ANGSTMAN delivered the opinion of the court.

This appeal is from an order dissolving an attachment. Plaintiff's action is on a promissory note in the sum of $2,000 for money loaned to defendant, which he alleges was secured by

a mortgage on two sections of land as one tract, and a quarter-section as another tract. Plaintiff alleges that at the time of the loan defendant fraudulently represented that the first tract was free and clear of encumbrance, whereas it was mortgaged to another party long before, the amount of the indebtedness at the time of the filing of the complaint being $1,484.60. The other tract had an existing prior mortgage in the sum of $6,000 which was in the process of foreclosure when this action was commenced. He alleges further that in making the loan he relied upon the representations that the first tract was free and clear of encumbrances.

Plaintiff filed an affidavit for attachment stating, in substance and effect, that the mortgage security was worthless and valueless, through no fault of his. He reiterated the allegations of fraud with reference to the representations of defendant that the first tract was unencumbered, and asserted that the lands upon foreclosure and sale would not bring enough to satisfy the first mortgage and that, in consequence, his security had become valueless. A writ of attachment was issued and levied. Defendant filed a motion to dissolve the attachment upon the following grounds: ''1. That the plaintiff's complaint does not state facts sufficient to constitute a cause of action against the defendant. 2. That this action cannot be maintained against the defendant for the reason that it is prohibited by section 9467 of the Revised Codes of Montana, the plaintiff's note and indebtedness therein sued upon being secured by a mortgage upon real property and said mortgage has not been foreclosed. 3. That plaintiff is not entitled to have a writ of attachment issued, served or levied upon the property of the defendant until he has first exhausted the mortgage security held and possessed by him as security for the payment of the indebtedness sued upon. 4. That it does not sufficiently or at all appear from plaintiff's complaint or by the plaintiff's affidavit for attachment that the plaintiff's mortgage security held and possessed by him as security for the payment of the indebtedness sued upon has, without any act of the plaintiff, the person to whom the security was given, become valueless.''

At the hearing on the motion evidence was introduced by plaintiff showing that the lands in question were not worth the amount of the first mortgage indebtedness. Defendant did not testify at the hearing and filed no counter-affidavit. The only evidence offered by him was the assessment records showing the assessed valuation of the lands. The trial judge sustained the motion, basing his decision upon the ground that plaintiff must exhaust his security by foreclosure proceedings before he is in a situation to show that his security has become valueless.

In considering the propriety of the court's decision, two sections of our statute require consideration. Section 9467, Revised Codes, provides in part: "There is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter." The chapter then deals with proceedings for the foreclosure of the mortgage. The other section involved is section 9256, which authorizes an attachment in certain contract actions, "where the contract is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless."

The purpose of section 9467 is to compel one who has taken security for his debt to exhaust the security before resorting to the general assets of the debtor. (*Lepper* v. *Jackson*, 102 Mont. 259, 57 Pac. (2d) 768.) In order to harmonize sections 9467 and 9256, this court has held that section 9467 does not prohibit a personal action when the mortgage security has become valueless (*Barth* v. *Ely*, 85 Mont. 310, 278 Pac. 1002; *Vande Veegaete* v. *Vande Veegaete*, 75 Mont. 52, 243 Pac. 1082), and has held that it is no bar to a personal action in all cases even though the act of the mortgagee may have caused the security to become valueless. (*Richardson* v. *Lloyd*, 90 Mont. 127, 300 Pac. 254; *Leffek* v. *Luedeman*, 95 Mont. 457, 27 Pac. (2d) 511, 91 A. L. R. 286.)

The supreme court of Idaho, under a statute like our section 9467, has also held that a personal action may be maintained if the security has become valueless. (*Edminister* v. *Van Eaton*, 57 Idaho, 115, 63 Pac. (2d) 154, 108 A. L. R. 393.)

Obviously, to prove that the security has become valueless under section 9467, it would not be necessary to first foreclose the mortgage.

We then come to the question whether it is necessary, under ■■ section 9256, to foreclose the mortgage in order to prove that the security has become valueless so as to authorize an attachment, or may that be proven otherwise than by foreclosure proceedings? We think it is clear that if plaintiff must foreclose his mortgage before he can prove that his security is valueless under section 9256, then that part of the statute authorizing attachment when the security has, without the act of plaintiff, become valueless, becomes meaningless. After the foreclosure of the mortgage, the balance remaining due is unsecured so far as the mortgage is concerned. (*Union Bank & Trust Co.* v. *Himmelbauer*, 56 Mont. 82, 181 Pac. 332.) Plaintiff would then have a deficiency judgment on which execution could issue, and there then would be no occasion to determine whether the security was valueless, or whether an attachment could issue. At that stage of the case, there is no security to be valued.

The statute clearly contemplates that a plaintiff may, without foreclosing, attach property by showing that the security has become valueless through no act of his. Adjudicated cases are not in harmony on this general subject. We think the better-reasoned cases support the view that, where there has been a change of circumstances, after the taking of the mortgage resulting in the fact that it has become valueless, this fact may be shown without resorting to the useless procedure of foreclosure.

Thus in *McPhee* v. *Townsend*, 139 Cal. 638, 73 Pac. 584, a debt was secured by bonds of a projected railroad company. The railroad was never constructed and the company never had or acquired any property of any value, and thus the bonds had no value. The court said: "If, as here pleaded, and as the evidence substantiates, the bonds given as security were at the

time of their delivery valueless, it follows that there was no contract of security; that no property in truth was hypothecated or pledged, and that the creditor stands in precisely the position as would one whose debtor had made no pretense of securing the debt.''

In *Republic Truck Sales Corp.* v. *Peak*, 194 Cal. 492, 229 Pac. 331, it was held that plaintiff could show by affidavit and without foreclosure proceedings, that its mortgage had become valueless because it covered property that was not mortgageable, and that attachments subsequently issued, but for debts antedating the mortgage, were for sums of money in excess of the value of the property.

In *Bennett* v. *Superior Court*, 218 Cal. 153, 21 Pac. (2d) 946, the court held that where plaintiff alleged that his security had become valueless without any act or fault of his, due to the fact that his security was subordinate to a prior encumbrance, an attachment was proper, and this without being compelled to first foreclose his lien.

There are cases holding that where plaintiff voluntarily takes security for a debt, whether a first or second mortgage, and there is no change of circumstances, he must foreclose and cannot assert that the security has become valueless. Among such cases are the following: *Barbieri* v. *Ramelli*, 84 Cal. 154, 23 Pac. 1086, cited approvingly in *Largey* v. *Chapman*, 18 Mont. 563, 46 Pac. 808, and in *Barth* v. *Ely*, supra; *Yorks* v. *Roberts*, 47 Idaho, 312, 274 Pac. 799; *Giandeini* v. *Ramirez*, 11 Cal. App. (2d) 469, 54 Pac. (2d) 91. The decision of the trial court is based upon these decisions. In effect, these cases hold that when plaintiff takes security he is precluded from thereafter asserting that it had no value when taken, and unless there has been a change of circumstances thereafter affecting its value as security, he must foreclose. They are based primarily upon estoppel. (Compare *Giandeini* v. *Ramirez*, supra.) But here plaintiff did not knowingly take a second mortgage so far as the two sections of land were concerned. He thought he was getting a first mortgage on them, as the defendant, according to plaintiff's allegations, represented. This fact is not dis-

puted here. It is the same, in legal effect, as if defendant had given a mortgage on property which he did not own. At least, so far as the two sections of land were concerned, defendant did not own the property right therein which he led plaintiff to believe he did, and had no right to give to plaintiff a first mortgage thereon.

Plaintiff is not estopped from showing that because of the existence of the first mortgage, the security which he actually obtained through the misrepresentations of defendant was valueless. It is true plaintiff here does not claim that there has been a change of circumstances since the execution of the mortgage affecting its value as security. His contention is that it was valueless when given and has been valueless ever since. Since he was victimized by the fraud of defendant, he is not precluded or estopped from so showing. We think it does not lie in the mouth of this defendant, who, according to the only affidavit before us, deceived and defrauded the plaintiff, to say to plaintiff, "You must foreclose your second mortgage (which defendant represented was a first mortgage) before you can assert that it has no value." To so hold would be tantamount to awarding a prize for fraud and deceit, and permitting a party to take advantage of his own wrong, contrary to our statute. (Sec. 8746, Rev. Codes.)

This court, in *Brophy* v. *Downey,* 26 Mont. 252, 67 Pac. 312, 315, said "We do not understand, however, that the only mode of ascertaining whether a particular mortgage is of value is by its foreclosure." Furthermore, the California supreme court as early as 1890 acquiesced in the procedure of determining whether the security has value by direct evidence and without foreclosure proceedings. (*Barbieri* v. *Ramelli,* 84 Cal. 174, 24 Pac. 113.) In that case the court discharged an attachment because the defendant showed that the security had not become valueless. This he did by affidavit reciting facts other than the foreclosure of the mortgage. If evidence other than foreclosure proceedings can be resorted to, to show that the security has value, then it would seem axiomatic that proof that the security was valueless could be shown otherwise than by

foreclosure proceedings. To the same effect is *Toby* v. *Oregon P. R. Co.,* 98 Cal. 490, 33 Pac. 550. For the same reason it was not necessary for plaintiff to await the foreclosure of the first mortgage and hope for the uncertain possibility that defendant would redeem the property within the statutory time, and thus in effect make plaintiff's mortgage a first encumbrance on the property and establish that the security was not valueless.

Defendant contends that the allegations of fraud should be disregarded, for the reason that the prior mortgages were of record and plaintiff is chargeable with notice and knowledge of what the records disclose. While the facts involved were somewhat different in that the title was not the subject-matter of the fraud, this court in *Como Orchard Land Co.* v. *Markham,* 54 Mont. 438, 171 Pac. 274, 276, made use of language which we believe has equal application to the facts as presented by the record here, when applied to the defendant. It there said: "It is rather an unsavory defense for plaintiff to say: 'I made these representations to induce the sale, knowing they were false; but defendants were foolish not to suspect I was a knave.' (*Jacobsen* v. *Whitely,* 138 Wis. 434, 120 N. W. [285] 286.) A fraudulent vendor cannot appeal to the law to extol his deceit and condemn the credulity of his victim." (See, also, *Wilcox* v. *Schissler,* 55 Mont. 246, 175 Pac. 889.)

The cases are in conflict as to whether a person may rely upon representations affecting title to property when an examination of the records would reveal the true situation. Mr. Pomeroy, in his Equity Jurisprudence, volume 2, section 891, said: "It may be laid down as a general proposition that where the statements are of the first kind [i. e., statements of fact], and especially where they are concerning matters which from their nature or situation may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on them; he is justified in relying on them, and in the absence of any knowledge of his own, or of any fact which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself.

It does not, under such circumstances, lie in the mouth of the person asserting the fact, to object or complain because the other took him at his word."

In *Mead* v. *Bunn*, 32 N. Y. 275, it was said: "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which the other party to the contract, with full means of knowledge, has * * * pledged his faith." To the same effect are *Loverin* v. *Kuhne*, 94 Conn. 219, 108 Atl. 554, 33 A. L. R. 848, *Intermountain Lumber Co.* v. *Radetsky*, 75 Colo. 570, 227 Pac. 564, 33 A. L. R. 844, and *Goody* v. *Maryland Casualty Co.*, 53 Idaho, 523, 25 Pac. (2d) 1045.

The author of an exhaustive note in 33 A. L. R., commencing on page 853, says on page 903: "The doctrine sustained by a clear preponderance of authority, both English and American, is that a claim founded upon a fraudulent misrepresentation cannot ordinarily be defeated by showing that the deceived party might, by making an independent investigation, have ascertained the falsity of the representor's statements. In some of the statements embodying this doctrine the nonexistence of any duty to make an independent investigation is affirmed absolutely and without any qualification. (a) 'When once it is established that there has been any fraudulent misrepresentation or willful concealment, by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it, to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue, or have concealed the truth, for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty." ' " The same author, on page 940, lists twenty-five states as supporting this view and only three against it.

Defendant's contention that the allegations of fraud should be disregarded cannot be sustained. Of course, plaintiff was chargeable with constructive notice of the first mortgage (sec. 6934, Rev. Codes), so that as against the first mortgagee he is precluded from contending that his mortgage takes precedence over the prior mortgage of record.

Nor do we think that the lapse of nearly seven years from the time the mortgage was taken by plaintiff until this action was brought, precludes him from showing the fraud as the basis for a showing that the security has become valueless. The fraud is immaterial so far as plaintiff's right to recover on the indebtedness is concerned. It is only important to show that the security has become valueless, and that plaintiff is not estopped from so asserting.

It is argued by defendant that the plaintiff's affidavit for attachment is insufficient, because it does not negative the fact that any other form of security existed save that admitted in the affidavit. He relies upon the cases of *Farmers' State Bank* v. *Gray*, 36 Idaho, 49, 210 Pac. 1006, and *Anaheim Nat. Bank* v. *Kraemer*, 120 Cal. App. 63, 7 Pac. (2d) 765. In those cases that specific point was raised on motion to discharge the attachment; here it was not raised by the motion. A motion to discharge an attachment must specifically point out the objection relied upon, so that the opposite party may answer the objection (*Omaha Upholstering Co.* v. *Chauvin-Fant Furniture Co.*, 18 Mont. 468, 45 Pac. 1087) by amendment of the affidavit, or otherwise. (*Patch* v. *Stewart*, 78 Mont. 192, 253 Pac. 254; *Hetrick* v. *Renwald*, 73 Mont. 426, 236 Pac. 1089.) Furthermore, the first holding in the *Gray Case* relied upon by defendant, was greatly limited on the second rehearing and completely disapproved in the later case of *Mitchell* v. *Ada Invest. Co.*, 42 Idaho, 421, 246 Pac. 10.

Under the facts here presented it was error to discharge the attachment. The order appealed from is reversed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.