2 F.3d 948
 FEDERAL DEPOSIT INSURANCE CORPORATION, as manager of the
Federal Savings and Loan Insurance Fund, successor in
interest to the Federal Savings and Loan Insurance
Corporation, as receiver for Central Illinois Savings and
Loan Association, Plaintiff-Appellee,
v.
Jeff SHOOP, a/k/a Jeffrey W. Shoop; Bill Boyer, a/k/a
William L. Boyer; Ronald J. Slovak; John C.
Kafka, Defendants,
and
Robert F. Kafka, d/b/a BS Partnership, Defendant-Appellant.
 No. 91-35494.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 8, 1993.
Decided Aug. 16, 1993.
 
 Mark E. Noennig, Hendrickson, Everson, Noennig & Woodward, P.C., Billings, MT, for defendant-appellant Robert Kafka.
 Kenneth S. Frazier, Felt & Martin, and Randall G. Nelson, Billings, MT, for plaintiff-appellee FDIC.
 Appeal from the United States District Court for the District of Montana, James F. Battin, District Judge, Presiding.
 Before: WRIGHT, THOMPSON and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 The FDIC sued on a promissory note for FSLIC as successor to a failed savings and loan association. The debtors on the note claim that the suit is barred by Montana's "one action rule." Montana and several other states have a statute providing for "but one action" on a mortgage and the promissory note secured by it. The district court granted summary judgment for the FDIC, but we reverse.[1]
 
 
 2
 I. Facts.
 
 
 3
 In 1980, Bill Boyer and Jeff Shoop bought a business and associated real estate from Virginia O'Brien. They bought the real estate on a contract, with the deed to be held in escrow until they had paid the contract price in monthly installments over a number of years. In order to convert the building from a warehouse to an office and warehouse and generally remodel it, Boyer and Shoop's partnership, BS, borrowed $450,000 from the Central Illinois Savings and Loan Association, FSLIC's predecessor in title. The bank took a second position, instead of paying off the O'Brien note and taking a first lien. So long as BS made payments, the bank remitted the appropriate portion to O'Brien. The rents could not cover the obligations, so the partners defaulted on their obligations both to O'Brien and to FSLIC.
 
 
 4
 O'Brien sued to foreclose on the land sale contract on March 4, 1988. Her foreclosure suit named FSLIC as receiver. The partnership and FSLIC agreed to deed the land back to her. FSLIC, pursuant to the agreement, directed the trustee on its deed of trust to reconvey its interest to O'Brien. The partnership and FSLIC agreed that the reconveyance to O'Brien of FSLIC's interest under its deed of trust "shall not operate as a waiver nor be deemed in any way to affect or prejudice any of the rights of F.S.L.I.C. or B.S. Partnership in any other litigation in which they are now involved or may hereafter become involved." By this agreement, FSLIC gave up its security interest in the land which secured its note.
 
 
 5
 FSLIC's complaint, filed March 17, 1988, was for $270,423.15 on its note. No foreclosure on the security was sought. Instead, the complaint said that its lien was "worthless" because O'Brien had already commenced her action to foreclose, and it was "valueless to plaintiff due to a change in the market values in the area, such that the current appraised value is insufficient to cover the amount of the Underlying Debt plus the costs of holding and selling the property."
 
 
 6
 FSLIC moved for summary judgment. The only issue of fact asserted by BS was the value of the property. FSLIC took the position that BS forfeited all right title and interest to O'Brien, eliminating the collateral, so the security was valueless. It did not submit evidence of the market value of the land. In opposition, Shoop submitted an affidavit estimating the value of the land at $500,000, subject to a $212,000 debt to O'Brien, when FSLIC filed its lawsuit. In reply, FSLIC filed a copy of O'Brien's judgment, showing that in 1989, after the filing of its action but before the summary judgment motion would be decided, the court in O'Brien's case had entered judgment declaring that neither BS nor FSLIC had any right, title or interest in the property. The FDIC had obtained an appraisal a year before its lawsuit which estimated the value of the land at $300,000, also substantially more than the O'Brien debt.
 
 
 7
 II. Analysis.
 
 
 8
 We review a grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Insurance Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992).
 
 
 9
 At common law, a creditor holding a mortgage might have two causes of action. One would be at law, on the note, for the unpaid debt. The other would be in equity, to foreclose the mortgagor's equitable right to redeem the mortgaged real estate. IV James Kent, Commentaries on American Law, at 175-76 (1830). Because of the ancient and continuing concern with protecting the debtor from unfair imposition by the creditor, various devices were developed to protect the debtor. Unfair imposition on the debtor might include double payment, by forfeiture of the land and also payment on a judgment.
 
 
 10
 Several western states adopted a "one action rule" as one of these devices.[2] There are two purposes of the rule:
 
 
 11
 One is to protect the mortgagor against multiplicity of actions when the separate actions, though theoretically distinct, are so closely connected that normally they can and should be decided in one suit. [ ] The other is to compel a creditor who has taken a mortgage on land to exhaust his security before attempting to reach any unmortgaged property to satisfy his claim.
 
 
 12
 George E. Osborne, Handbook On the Law of Mortgages, Sec. 334, at 701 (2d ed. 1970). Montana's one action rule states:
 
 
 13
 71-1-222. Proceedings in foreclosure suits.
 
 
 14
 (1) There is but one action for the recovery of debt or the enforcement of any right secured by mortgage upon real estate, which action must be in accordance with the provisions of this part. In such action the court may, by its judgment, direct:
 
 
 15
 (a) a sale of the encumbered property (or so much thereof as may be necessary);
 
 
 16
 (b) the application of the proceeds of the sale; and
 
 
 17
 (c) the payment of the costs of the court, the expenses of the sale, and the amount due the plaintiff.(2) If it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt, and it becomes a lien upon the real estate of such judgment debtor, as in other cases on which execution may be issued.
 
 
 18
 (3) No person holding a conveyance from or under the mortgagor of the property mortgaged or having a lien thereon, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action, need be made a party to such action. The judgment therein rendered and the proceedings therein had are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action.
 
 
 19
 Mont.Code Ann. Sec. 71-1-222 (1991).
 
 
 20
 FSLIC's interest was a "trust indenture" made pursuant to the Montana Small Tract Financing Act of Montana, providing for deeds of trust. Mont.Code Ann. Sec. 71-1-301. Such a device is generally "deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property," with exceptions not relevant in this case. Mont.Code Ann. Sec. 71-1-305. The form of the instrument therefore does not take this case out of the one action rule.
 
 
 21
 The parties agree that under the one action statute, first the property is sold, and then, if the sale proceeds leave a balance due on the note, judgment is entered for the difference. Mont.Code Ann. Sec. 71-1-222(2). In this case, FSLIC did not foreclose on the land, or advertise and sell it, so BS argues that it could not obtain a deficiency judgment.
 
 
 22
 Montana has long taken the position that "the purpose of [its one action statute] is to compel one who has taken security for his debt to exhaust the security before resorting to the general assets of the debtor." Bailey v. Hansen 105 Mont. 552, 74 P.2d 438, 440 (1937); Lepper v. Jackson, 102 Mont. 259, 57 P.2d 768, 770 (1936). The creditor cannot elect to waive the security and sue on the note. Lepper, 57 P.2d at 770. But this exhaustion of the security would be futile where the security has no value, so Montana holds that the statute "does not prohibit a personal action when the mortgage security has become valueless." Bailey, 74 P.2d at 440. The existence of the mortgage bars the suit on the debt alone, unless the creditor can show that "the security, through no fault of his, has become worthless." Lepper, 57 P.2d at 770.
 
 
 23
 When the FDIC sued BS, they were already in default to O'Brien, and she had already filed her suit to foreclose on her land sale contract, but she did not yet have her judgment. The uncontradicted evidence established for purposes of summary judgment that the land was worth substantially more than the debt to O'Brien. This raises the question of whether FSLIC's second lien had value, because the land was worth more than the O'Brien obligation against it. Under Montana law, legal title to the land remained in O'Brien throughout the contract period, but the buyers held equitable title. See Hannah v. Martinson, 232 Mont. 469, 758 P.2d 276, 278 (1988).
 
 
 24
 O'Brien's contract to sell the land to Boyer and Shoop contained this forfeiture language:
 
 
 25
 12. Should any default of Buyer hereunder remain uncured for more than thirty (30) days after written notice thereof, Seller may, without further notice or period of grace:
 
 
 26
 (a) use any appropriate remedy to enforce compliance with the provisions of this Agreement and to enforce collection from Buyer of any amounts due Seller, without accelerating the maturity of the unpaid balance or terminating the Agreement, all without prejudice to the privilege of Seller subsequently to accelerate the maturity of the balance or to terminate the Agreement; or,
 
 
 27
 (b) declare the entire unpaid principal balance with accrued interest thereon immediately due and payable and upon nonpayment thereof after thirty (30) days' notice to Buyer of said acceleration, Seller may enforce collection of the total amount then due and payable in any appropriate manner by any available remedy, or terminate this Agreement, retaining all payments made by Buyer as liquidated damages for breach of this Agreement.
 
 
 28
 13. If this Agreement is terminated by reason of Buyer's default, Buyer will immediately and peaceably, on demand, surrender possession of the property and any improvements thereon, and will, on demand, execute such documents as Seller may require to establish of record the termination of this Agreement and of the Buyer's interest in said property and improvements.
 
 
 29
 The contract allowed prepayment without penalty, so FSLIC could have paid O'Brien her $212,000, in order to have a first lien against real estate worth $300,000 to $500,000.
 
 
 30
 Under the language of the land sale contract, O'Brien could elect to keep the agreement alive and sue for payments due, or terminate it, keep what she had received already, and sue for the remaining amounts due on the contract. If she elected to terminate the agreement, she was entitled to have Boyer and Shoop give her possession and sign documents so that she would have good title unclouded by their interest.
 
 
 31
 Whether the provisions of the contract were valid could be a matter of dispute, because of the traditional abhorrence of forfeitures by the courts, even in the face of plain forfeiture language in land sale contracts used as security devices. Glacier Campground v. Wild Rivers, Inc., 182 Mont. 389, 184 Mont. 543, 597 P.2d 689, 692-93 (1978). It may be that the vendor on a land sale contract in Montana is not limited by the one action rule, see White v. Jewitt, 106 Mont. 416, 78 P.2d 85, 87 (1938), but that question is not before us, and we do not intimate an opinion on it. Also, removal of the equitable title was not self-executing, but required the cooperation of the buyers in executing documents after their default. O'Brien might have elected to keep the members of the partnership on the hook instead of terminating their contract.
 
 
 32
 The district court held that "the security was rendered valueless by defendants' default on the underlying contract for deed, and O'Brien's exercise of the contractual right to terminate the underlying contract and defendants' interest in the property." O'Brien gave notice of termination of the contract for deed and filed her complaint seeking foreclosure and termination of the contract before the FDIC sued on the note.
 
 
 33
 The debtor claims that the security was not rendered valueless until after FDIC sued, when the debtor and O'Brien settled on a reconveyance. The date FDIC sued, not the date of judgment, controls. Cf. Lockhart Co. v. Equitable Realty Co., 657 P.2d 1333, 1336 (Utah 1983).[3]
 
 
 34
 Where the vendor on a land sale contract has not yet pursued one of her remedies "to a conclusion," she is not yet precluded from electing an alternative remedy. See White, 78 P.2d at 88; Glacier Campground, 597 P.2d at 695-96. O'Brien therefore could have withdrawn her notice of forfeiture and decided to hold BS to the contract, up until the time she settled her case. In Glacier Campground, 597 P.2d at 692, the Montana Supreme Court explained that
 
 
 35
 "It is the general rule that the clause of forfeiture in a contract of the sale does not operate to make the contract void, when there is a default on the part of the vendee, so as to terminate the liability of the vendee, but the vendor may elect whether to declare a forfeiture or rely upon the liability of the vendee as fixed by the contract, and sue for the purchase price."
 
 
 36
 (quoting Alexander v. Wingett, 63 Mont. 254, 259, 206 P. 1088, 1089 (1922)) (emphasis added).
 
 
 37
 Also, the vendees under the O'Brien land sale contract may have had an equitable right to pay off the contract and redeem the property, even after O'Brien declared a forfeiture and sued to quiet title. Under Montana's antiforfeiture statute,
 
 
 38
 Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.
 
 
 39
 Mont.Code Ann. Sec. 28-1-104. If the vendees had tendered "full compensation" to O'Brien, they might have been able to avoid forfeiture of the property upon a showing of "facts which appeal to the conscience of a court of equity." Sharp v. Holthusen, 189 Mont. 469, 616 P.2d 374, 377 (1980); Parrot v. Heller, 171 Mont. 212, 557 P.2d 819, 820 (1976); see also Daugherty Cattle Co. v. General Construction Co., 254 Mont. 479, 839 P.2d 562, 565-66 (1992).
 
 
 40
 Because (1) O'Brien could have rescinded the forfeiture, (2) BS might have been able to redeem their interest at the time FDIC sued them on the note, and (3) BS's interest had value exceeding what it would cost to redeem it, there is a genuine issue of material fact as to whether the security was valueless. The valuable security on which Central Illinois Savings and Loan had lent $450,000 was BS's equitable title subject to O'Brien's superior legal title securing her land sale contract. Had FSLIC stepped into BS's shoes and offered to pay her, she might well have preferred the money to the empty warehouse and office space. FSLIC could have used its lien on BS's interest to shove them aside and take over the property in this way, and its own appraisal as well as their evaluation pegged its value at more than it would cost to pay off O'Brien. Of course, FSLIC might have thought it imprudent to spend $212,000 to improve its security on a $270,000 obligation, but that does not establish valuelessness of its security. FSLIC's predecessor in interest took a weak position when it made the loan secured only by a second lien, but the second lien on the collateral had value, under the evidence before the court on FDIC's motion, even though subordinated to O'Brien's interest.
 
 
 41
 We hold there was a genuine issue of material fact as to whether the security interest was rendered valueless. Because the district court relied on its finding that the "valueless" exception to the one action rule applied in rejecting defendants' argument that the FSLIC released its claims against the partnership, we remand for reconsideration of whether an enforceable release occurred and of the attorneys' fees award in light of this decision.
 
 
 42
 We REVERSE the district court's grant of summary judgment and award of attorneys' fees and REMAND for further proceedings.
 
 
 
 [1]
 Notice of appeal was filed by Bill Boyer, Ronald Slovak, and Robert Kafka, d/b/a BS Partnership. By stipulation of the parties, the judgment against Boyer was vacated on the ground that the FSLIC had released him from any liability. Slovak dismissed his appeal, but it continues as to Kafka
 
 
 [2]
 See, e.g., Cal.Code Civ.Proc. Sec. 726(a) (West 1980 & Supp.1993); Nev.Rev.Stat. Sec. 40.430 (Michie 1986 & Supp.1993); Idaho Code Ann. Sec. 6-101 (Michie 1990 & Supp.1993); Utah Code Ann. Sec. 78-37-1
 
 
 [3]
 The Montana Supreme Court looks to other jurisdictions who have similar statutes when interpreting their own. See Standard Chemical Manufacturing Co. v. Employment Security Div., 185 Mont. 241, 605 P.2d 610, 614 (1980). Both Montana and Utah have nearly identical one action rules, and thus Lockhart informs our interpretation of Montana's law