DA 11-0691

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 194

MOUNTAIN WEST BANK, N.A.,

      Plaintiff and Appellee,

  v.

HELENA CHRISTIAN SCHOOL, INC.,
CHRISTOPHER M. BATSON, ROBERT M.
DELLWO, KEN ERDAHL, RAY FULLER,
JACK C. HAMLIN, B.G. STUMBERG,
and ROBERT HITZEROTH,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. ADV-2010-1119
                Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            R. J. "Jim" Sewell, Jr., Bruce M. Spencer, Scott H. Clement, Smith Law
            Firm, P.C., Helena, Montana

      For Appellee:

            Amy Randall, Senior Vice President/General Counsel, Mountain West
            Bank, N.A., Helena, Montana

                        Submitted on Briefs:  July 18, 2012

                                    Decided:  September 5, 2012

Filed:

                                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Mountain West Bank (Mountain West or the Bank) obtained a summary judgment against Helena Christian School and the individual above-named defendants (HCS or the School) following HCS's default on loans from Mountain West. HCS appeals the decision of the Montana First Judicial District Court. We vacate the judgment and remand the matter to the District Court for further proceedings.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Did the District Court err by granting Mountain West's motion for summary judgment without complying with the requirements of § 71-1-222, MCA?

¶4 Did the District Court err by entering a judgment that did not comply with § 25-9-203, MCA?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 In August 2005, Helena Christian School borrowed $90,000 from Mountain West Bank at an annual interest rate of 7.25%. The loan documents allowed an interest rate increase of 3% in the event of default. Defendants Erdahl, Fuller and Hitzeroth signed the loan documents as personal guarantors. This loan was originally due in August 2006 but the maturity date was extended on several occasions with a final due date of February 9, 2010. While according to the loan documents, the interest rate changed during these loan extensions, the interest rate as of the last extension was again at 7.25%. The $90,000 loan was an unsecured loan.

2

¶6     In December 2008, the School took out a second loan and borrowed approximately $1,500,000 from the Bank at an annual interest rate of 7.25%. The original maturity date was December 29, 2010. The 2008 promissory note did not impose an interest rate increase in the event of default. In May 2009, the loan terms were renegotiated. A new maturity date of April 2010 was established, the interest rate was reduced to 6%, and a 3% point margin increase was imposed upon default. Subsequently, the maturity date was extended to August 2010. The seven defendants signed the loan documents as personal guarantors. Notably, this loan was secured by a mortgage on real property in Lewis and Clark County located near the Helena-based school.

¶7     On November 19, 2010, the Bank filed a complaint against HCS alleging breach of contract and default of both loans and seeking judicial foreclosure. At the time the Complaint was filed the Bank claimed the School owed $55,976.91 in principal on the $90,000 loan and $1,807.75 of accrued interest through November 19, 2010. Citing a 10.25% interest rate, the Bank claimed interest accumulating at the daily rate of $15.7195. Mountain West also asserted that HCS owed it $1,470,751.74 principal on the $1.5 million loan, plus $52,526.56 in accrued interest through November 19, 2010, $9,192.66 in late fees and costs, and $120 in court costs. The Bank claimed that this loan continued to accrue interest at 9% per annum, or $362.6511 per day.

¶8     The School moved to dismiss the Complaint in December 2010 and in March 2011 the District Court denied the motion. On April 19, 2011, the Bank moved for summary judgment and on November 16, 2011, the District Court granted the Bank's

3

motion. The court recited in its order that the Bank had sued to foreclose on the two promissory notes, that the School had defaulted on both loans, and that none of the guarantors had honored their obligations on the notes. Because the School had not contradicted the Bank's claims, the court determined that the Bank was entitled to judgment as a matter of law. It is from this ruling the School appeals.

## STANDARD OF REVIEW

¶9 We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 10, 363 Mont. 41, 265 P.3d 1230.

## DISCUSSION

¶10 *Did the District Court err by granting Mountain West's motion for summary judgment without complying with the requirements of § 71-1-222, MCA?*

¶11 In the District Court, the School argued that the Bank failed to comply with Montana's "one action" rule. On appeal, they argue that the District Court erred in failing to acknowledge and require compliance with this rule, and that the court's summary judgment order from which appeal is taken must therefore be vacated.

¶12 Section 71-1-222, MCA, known as the "one action" rule, addresses proceedings in a foreclosure suit. In relevant part, it states:

> (1) There is only one action for the recovery of debt or the enforcement of any right secured by a mortgage upon real estate, and that action must be in accordance with the provisions of this part. In the action, the court may, by its judgment, direct:

(a) a sale of the encumbered property or as much of the property as may be necessary;

(b) the application of the proceeds of the sale, including the payment of property taxes due at the time of foreclosure; and

(c) the payment of the costs of the court, the expenses of the sale, and the amount due the plaintiff.

(2) If it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for the balance against the defendant or defendants personally liable for the debt, and it becomes a lien upon the real estate of the judgment debtor, as in other cases on which execution may be issued.

¶13 The purpose of this statute is two-fold: first, it protects the mortgagor—in this case, the School—from having to defend two actions against it. Under common law, a mortgagor could be sued by a secured creditor to collect the unpaid debt under the promissory note *and* be sued in equity seeking forfeiture of the property used as security or collateral. The one-action rule prevents such dual actions against the debtor. Second, the statute compels the creditor who holds the mortgage on the land to resolve the indebtedness through sale of the secured property first, before attempting to reach the mortgagor's unmortgaged property. *FDIC v. Shoop*, 2 F.3d 948, 950 (9th Cir. 1993). In *Shoop*, the Ninth Circuit Court of Appeals, applying § 71-1-222, MCA, observed that under the statute, "first the property is sold, and then, if the sale proceeds leave a balance due on the note, judgment is entered for the difference." *Shoop*, 2 F.3d at 951.

¶14 In the case before us, this statute applies to the $1.5 million loan secured by real property, and not to the $90,000 loan which, as noted above, was an unsecured loan. In *Federal Land Bank v. Heidema*, 224 Mont. 64, 727 P.2d 1336 (1986), we noted that in foreclosure proceedings under § 71-1-222, MCA, "[t]he court, by its judgment in a

5

mortgage foreclosure action, directs the sheriff to make the sale." *Heidema*, 224 Mont. at 67, 727 P.2d at 1338. In this case, the District Court granted summary judgment on the notes and docketed judgment for an unspecified amount but did not direct the sale of the property or otherwise even acknowledge § 71-1-222, MCA. Under the statute, *Shoop*, and *Heidema*, this was error. We therefore reverse and remand for compliance with § 71-1-222, MCA.

¶15 Did the *District Court err by entering a judgment that did not comply with § 25-9-203, MCA?*

¶16 The School further argues that the District Court's order granting summary judgment does not comply with § 25-9-203, MCA, and should be vacated. Chapter 9 of Title 25 addresses all types of civil judgments. Section 25-9-203, MCA, identifies what judgments must contain and specifically states:

> **How amount expressed**. In judgments, the amount thereof must be computed and stated as near as may be in dollars and cents, rejecting fractions of a cent.

¶17 The court's order briefly recounts the origins of the School's loans and states that "Helena Christian defaulted on both loans, and none of the individual guarantors have honored their obligation on the loans." The court continued:

> Defendants have not provided any evidence that contradicts the evidence presented by Mountain West or that raised a disputed issue of material fact, other than disputing the rate of interest on the 2008 loan and subsequent modifications. Those documents speak for themselves. The loan-related documents attached to the complaint contain the material facts that entitle Mountain West to judgment.

However, the order does not distinguish between the secured and unsecured loans and it neither states nor computes the amount of the judgment entered against the Defendants.

6

¶18 The Bank counters that the order complies with § 25-9-203, MCA, because its summary judgment motion "computed the amounts owed under the loans in question with specificity, and requested that the District Court issue a Judgment in conformity with the amounts due."

¶19 This argument is unpersuasive. The Bank's brief in support of its summary judgment motion provided the loan information recited above in paragraph 7. However, neither the brief in support of summary judgment nor the order granting summary judgment reflected the amounts due as of the day the court entered summary judgment. The amount due, among other things, would have included interest accrued since November 19, 2010. Moreover, the Bank's brief expressly stated: "The balance due under [these loans] . . . has been stated by Plaintiff. Therefore, the exact amount of Judgment can be entered by mathematical calculation once [the District Court] enters Summary Judgment on liability in favor of Plaintiff." As the court's summary judgment order did not compute or include the precise amount of judgment, it does not comply with § 25-9-203, MCA.

¶20 Lastly, the School raises questions concerning what interest rate should apply to the defaulted $1.5 million loan. In light of the several revisions to the loan documents, it is difficult to ascertain what the controlling rate should be. This issue of fact should be resolved upon remand.

¶21 In summary, upon remand, the District Court must compute and state the exact judgment amount, including interest, pertaining to the unsecured $90,000 loan. As for the secured $1.5 million loan, the court must comply with the provisions of § 71-1-222,

MCA. Upon receipt of notice of the proceeds received in the sheriff's sale, in the event of a deficiency, the court must determine the appropriate rate of interest vis-à-vis the deficiency, and enter an order of judgment computing and stating the amount owed by Defendants. At that time the judgment on the secured loan may be docketed.

**CONCLUSION**

¶22 For the foregoing reasons, we vacate the District Court's judgment and remand for further proceedings in accordance with this Opinion.


/S/ PATRICIA COTTER

We concur:

/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ BETH BAKER